UNITED STATES of America, Plaintiff,

v.

A RESIDENCE LOCATED AT 218 3RD STREET, NEW GLARUS, WISCONSIN, Defendant,

and

UNITED STATES of America,

v.

ONE SAFETY DEPOSIT BOX LOCATED AT the BANK OF SHOREWOOD HILLS, 810 SHOREWOOD BLVD., MADISON, WISCONSIN, Defendant.

Nos. 84–M–191, 84–M–193.

United States District Court, W.D. Wisconsin.

Nov. 26, 1985.

Grant Johnson, First Asst. U.S. Atty., Madison, Wis., for plaintiff.

Charles Giesen, Giesen & Berman, Madison, Wis., for defendant.

## OPINION AND ORDER

CRABB, Chief Judge.

The government appeals from orders of the United States Magistrate entered in these two proceedings requiring the return of certain seized property to its owner, movant David Lewallen.

The record reveals that on November 13, 1984, the United States Magistrate issued a search warrant authorizing a search of "a single-family, ranch style residence and an unattached shed type structure, all located at 218 Third Street, New Glarus, Wisconsin," and seizure of enumerated kinds of records evidencing either the obtaining and concealment of assets or the expenditures of money by David Lewallen since 1978; indicia of ownership of the property being searched; and photographs of co-conspira-

tors, assets, or controlled substances, particularly cocaine. Supporting the application for the warrant were lengthy affidavits sworn to by Tommy Cauthen, Special Agent, Federal Bureau of Investigation, and by George Paul, Special Agent, Criminal Investigation Division of the Internal Revenue Service, detailing a four year investigation of David Lewallen and setting forth the bases for the affiants' beliefs that movant had violated 21 U.S.C. §§ 841, 843, 844, and 846, as well as 26 U.S.C. §§ 7201, 7203, and 7206.[1] Affiants swore to instances in which Lewallen was alleged to have sold large quantities of cocaine or to have acquired expensive assets that would suggest he had not reported all of his taxable income for the years 1977–1983. Also, Agent Paul averred as follows:

7. That on Tuesday, 11/06/84, I contacted the Criminal Investigation Branch of the Internal Revenue Service Center at Kansas City, Missouri. At that time I caused a search to be made of the Internal Revenue Service Records located at the Midwest Service Center in order to determine whether or not David R. Lewallen had filed a Federal Income Tax Return for the tax year 1983. On 11/06/84 I received confirmation from the Midwest Service Center that David R. Lewallen had not filed an income tax return for the year 1983. The Service Center records reflect that Lewallen has filed three requests for extension of time to file his 1983 Federal Income Tax Return. The records of the IRS–Midwest Service Center also reflected that Lewallen's income tax return for the tax year 1983 was due to be filed by October 15, 1984 and, based upon the search conducted by Internal Revenue Service employees in Kansas City that return was not

---

**1.** 21 U.S.C. § 841 prohibits the manufacture, distribution, and possession of controlled substances; 21 U.S.C. § 843 prohibits the use of communication facilities in the distribution of controlled substances; 21 U.S.C. § 844 prohibits possession of a controlled substance; and 21 U.S.C. § 846 prohibits attempts or conspiracies to commit any of the offenses defined in subchapter I of Chapter 13 of Title 21 (Drug Abuse Prevention and Control).

26 U.S.C. § 7201 makes criminal a willful attempt to evade payment of federal taxes; § 7203 makes criminal a willful failure to file a return, keep records, supply information, and pay taxes; and § 7206 makes criminal a willful filing of a false return or a concealment of goods or commodities with intent to evade the assessment or collection of taxes.

filed by October 15, 1984 as required and has not yet been filed.

Following issuance of the warrant, agents of the Federal Bureau of Investigation seized items from the New Glarus residence which they listed in a fifteen page inventory filed with the magistrate.

On November 14, 1984, the magistrate issued a second warrant, authorizing the search of "One safety deposit box No. 1083, located at The Bank of Shorewood Hills, 810 Shorewood Boulevard, Madison, Wisconsin." Supporting the application for this warrant were the same affidavits of Paul and Cauthen filed in support of the New Glarus warrant, supplemented by an affidavit of Dale G. Mueller, Supervisory Special Agent, Federal Bureau of Investigation, detailing information he asserted established probable cause to believe that the safe deposit box contained evidence of criminal activity by its owner, David Lewallen.

Search of the safe deposit box led to seizure of approximately eighteen items, including six large emeralds and several containers of gold coins.

On November 27, 1984, David Lewallen moved for return of the property seized in the execution of the search warrant for the New Glarus property, contending that he was entitled to lawful possession of some of it, that he needed certain papers returned to him to permit him to conduct his personal and business affairs, that the warrant authorizing the search had been issued without probable cause, that the warrant did not describe with sufficient particularity the items to be seized, and that the seizure of some of the items exceeded the authority of the warrant. Later, Lewallen amended the motion to include a request for the return of items seized in the search of the safe deposit box. On January 28, 1985, Lewallen moved for an evidentiary hearing, contending that the affidavit of

Agent Paul contained material false statements and deliberate material omissions made by the affiant with either knowledge of their falsity or reckless disregard for their truth, *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and also that the seizure of the bank records relating to movant violated 12 U.S.C. § 3401 *et seq.*, the Right to Financial Privacy Act.

On April 29, 1985, over the government's strenuous objections, the magistrate held an evidentiary hearing on Lewallen's motion.[2] In an order entered April 16, 1985, granting the motion for an evidentiary hearing, the magistrate noted that the government had conceded that paragraph 7 of Paul's affidavit was inaccurate and that, in fact, Lewallen had filed his 1983 tax return before its October 15, 1984 due date. The magistrate held that when paragraph 7 is excised from the affidavit, "there appears to be insufficient evidence to support a finding of probable cause to believe there was a violation of the laws with respect to the 1983 tax year." (Order of April 16, 1985, p. 4)

On the basis of the evidence adduced at the evidentiary hearing, the magistrate concluded as a matter of law that Paul's statement in paragraph 7 had been made with reckless disregard for the truth. He found also that the materials seized in the execution of the warrant for the safe deposit box were taken in violation of § 3420 of the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* He ordered the return of those seized materials relating to the 1983 tax year or obtained from the search of the safety deposit box.

■ As a threshold matter, the government argues that the magistrate should have characterized his order as a report and recommendation pursuant to subsec-

---

**2.** Although the government did not appeal from the magistrate's order setting the hearing, at the outset of the hearing, before any evidence was introduced, it raised oral objections to the holding of the hearing. To accommodate the government, the magistrate adjourned the evi-

dentiary hearing for thirty minutes to allow the government to take an appeal to a judge of the district court. The government chose not to take such an appeal, apparently in the belief that the magistrate's order was not appealable.

tion (b)(1)(C) of 28 U.S.C. § 636, rather than as an order. I agree.

The Federal Magistrates Act, 28 U.S.C. §§ 631–639, sets forth the jurisdiction and powers of magistrates. Magistrates have all the powers and duties imposed upon their predecessors, United States Commissioners, § 636(a)(1); the power to conduct trials of misdemeanors, § 636(a)(3); the power, upon designation by a judge, to hear and determine "any pretrial matter pending before the court," with certain enumerated exceptions, one of which is a motion to suppress evidence, § 636(b)(1)(A); the authority to conduct evidentiary hearings and submit to a judge proposed findings of fact and recommendations for disposition, of any motions excepted in § 636(b)(1)(A), and of applications for post-trial relief brought by convicted persons and of prisoner petitions challenging conditions of confinement, § 636(b)(1)(B). Also, magistrates may be designated as special masters, § 636(b)(2); may conduct any or all proceedings in a jury or nonjury civil matter upon consent of the parties, § 636(c); and "may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States," § 636(b)(3).

The two subsections that might apply to this proceeding are § 636(b)(1) (pretrial matters) and § 636(b)(3) (additional duties). However, a motion for return of seized property is not a "pretrial matter" within the meaning of § 636(b)(1); by its very nature, such a motion is made after seizures that do not lead directly to indictment and trial. Once an indictment is returned, the person aggrieved by the seizure would file a motion to suppress the seized evidence.

■ Disposition of a motion for the return of seized property is not a mere procedural or administrative function that would fall within the confines of § 636(c); its resolution frequently requires factfinding, credibility assessment, and the exercise of discretion, all of which are functions that Congress has retained in district judges. *See United States v. Curry*, 767 F.2d 328

(7th Cir.1985); *In re Grand Jury Appearance of William C. Cummings*, 615 F.Supp. 68 (W.D.Wis.1985). Thus, since motions for the return of property do not fit precisely into either § 636(b)(1) or § 636(b)(3), it could be argued that a magistrate lacks the statutory authority even to hear and make recommendations for the disposition of such motions. However, it is unlikely that Congress would have given magistrates the power to conduct evidentiary hearings and submit proposed findings of fact on motions to suppress illegally seized evidence, but would not have given magistrates the authority to hear and make recommendations on motions to return seized property, when the motions are essentially identical. I conclude that magistrates are empowered by implication to conduct evidentiary hearings and to submit proposed findings of fact and recommendations on motions for the return of seized property.

I will construe the magistrate's order as a report and recommendation and determine whether to accept or reject his findings, giving *de novo* consideration to those portions of the report to which the government has made specific objections. 28 U.S.C. § 636(b)(1). The first of these portions is the magistrate's proposed finding of fact that Agent Paul acted with reckless disregard for the truth in making the statement in paragraph 7 of his affidavit. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674. Preliminary to this finding, the magistrate found that Agent Paul swore that on November 6, 1984, he had contacted the Criminal Investigation Branch of the Internal Revenue Service Center at Kansas City, Missouri, and learned that same day that Lewallen's 1983 tax return had not been filed as of its due date, October 15, 1984; that, in fact, Lewallen had filed his 1983 tax return before October 15, 1984; and that once a tax return has been mailed to the IRS and enters the "pipeline" (a series of stations at which the return is processed), its existence will not show up on the computer for a minimum of four weeks, and that the minimum time neces-

sary for confirming the fact and date of filing is ten weeks from the date of filing.

This last finding of fact by the magistrate is not made expressly, but is implicit in his report. It is derived from the testimony of Mark Frank, who stated that he had telephoned the IRS Information Center and the IRS Public Affairs Department on behalf of Lewallen and had been given information about the processing of tax returns. Frank testified also that he was told that employees of the United States Justice Department would be unable to confirm the fact and date of filing any sooner than could members of the public.

■ From my own review of the challenged affidavit, the transcript of the evidentiary hearing, and the briefs of both parties, I find that the magistrate's proposed preliminary findings of fact are correct. However, I am unable to find, as he did, that Paul made his averment with reckless disregard for the truth.

The government contends that the magistrate erred in admitting and relying upon the testimony of Mark Frank because it was hearsay. Although the government concedes that hearsay evidence may be admitted and relied upon in an evidentiary hearing on a preliminary question, Rules 104 and 1101(d), Federal Rules of Evidence, it argues that the generally relaxed rules of evidence in force at an evidentiary hearing should not be interpreted as allowing the receipt of hearsay evidence on the crucial fact to be determined at the hearing. The flaw in the government's argument is that the challenged testimony is not hearsay. Rather, it is an admission by a party opponent, as the magistrate held in allowing it into evidence. *See* Rule 801(d)(2), Federal Rules of Evidence. Therefore, it was not improper for the magistrate to receive the testimony or to rely upon it.

Lewallen showed that a return filed between October 10 and October 15 could not have been processed or even located by November 6, 1984. From this, two reasonable inferences could be drawn: 1) that Agent Paul did not receive the information he said he did, or 2) that he did receive this information. Lewallen argues that if the latter is true, the finder of fact may presume that as an experienced revenue agent, Paul would have known that the information was unreliable.

The government argues that because the movant failed to show that the Criminal Investigation Division would not have had special access to tax return information, he failed to prove that Paul's averment was false or based on information he knew to be unreliable. However, Frank did testify that he had asked the IRS employees whether Justice Department officials had access to expedited information about tax returns and was told they did not. This suggests strongly, as does the evidence concerning the "pipeline," that the system is not susceptible of monitoring by any agency until a return has reached a certain station in the processing. The fact that Agent Paul's "information" was proven to be wrong does not provide much support for the government's argument that the Criminal Investigation Department should be assumed to have unique, reliable sources of information about the status of recently filed tax returns.[3]

However, I do not believe the magistrate should have indulged in the presumption that an experienced revenue agent would have known that the information he received was unreliable. Although it seems likely that a revenue agent would have known the difficulties of determining the status of recently filed tax returns and therefore, would have known of the unreliability of the information he was receiving, it is not so clear a proposition as to enable the magistrate essentially to take judicial notice of it as an uncontestable fact.

Setting aside the presumption that an experienced revenue agent would have

---

**3.** In its reply brief, the government states that "[c]learly, a Justice Department employee stands in a different position [with respect to access to tax records] than an employee of the Internal Revenue Service." I do not find this proposition as self-evident as the government suggests.

known that the information he received from Kansas City was unreliable, the magistrate was left with two equally plausible inferences that could be drawn from the facts: that Paul did receive the information he said he did or that he did not. Where two inferences may be drawn from the same facts, the finder of fact may not choose between them. In this instance, the magistrate should have concluded that the movant had not met his burden of proof on the question of the asserted illegality of the search warrants as they related to the 1983 tax year. Therefore, I decline to adopt the magistrate's proposed conclusions of law as to Paul's state of mind or his recommendation to hold the warrants invalid because of Paul's statement.[4]

Citing *United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the government suggests that whatever their defects, the search warrants at issue here should not be held invalid because the affiants acted in good faith. In *Leon* the Supreme Court addressed the question of modifying the Fourth Amendment exclusionary rule so as not to bar the use at trial of evidence obtained by officers acting in reasonable reliance on a search warrant later found to be insufficient. It is unlikely that *Leon* applies to a situation which does not involve the suppression of evidence; in that case the Supreme Court was concerned with "[t]he substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights...." *Id.* 104 S.Ct. at 3413. Even if, as a general rule, *Leon* did apply to motions for the return of property, that case would not be applicable in this situation. In *Leon,* the Supreme Court held that in all but four circumstances evidence obtained in reasonable reliance upon a facially valid search warrant could be admitted into evidence. The first of these circumstances is the situation in which a warrant is issued upon deliberate or reckless material misrepresentations by the affiant. *Id.* at 3417. Since a reckless material misrepresentation is the basis for the movant's claim that these search warrants should be invalidated, *Leon* would not help the government if the magistrate were correct in his proposed finding that Paul had acted with reckless disregard for the truthfulness of his averments.

■ I turn next to the second issue raised by the government: that the magistrate erred in interpreting 12 U.S.C. § 3420 of the Right to Financial Privacy Act to require the custodian of materials subpoenaed by the grand jury to be the person that physically presents the subpoenaed materials to the grand jury.[5]

On this issue, the magistrate found as fact that at 9:15 a.m. on November 14, 1984, Special Agent Dale Mueller of the Federal Bureau of Investigation, and Ray Shields, an agent of the Internal Revenue Service, presented a grand jury subpoena to Leon Waters, Cashier of the Bank of Shorewood Hills. The subpoena directed Waters to appear on that same date at 10:00 a.m. to the grand jury room of the United States District Court and to bring with him records pertaining to the rental of any safety deposit box by, for, or on behalf of David R. Lewallen. The agents represented to Waters that the subpoena would be satisfied if Waters turned over to the agents copies of the documents sought. In

---

**4.** The government maintains that the magistrate erred in allocating the burden of production of evidence, thus penalizing the government. The magistrate did state in his report that the burden of production of proof had shifted to the government at the conclusion of the movant's presentation. The government is technically correct in arguing that the burden of production does not "shift" to the government at the end of the movant's presentation. However, if the government stays silent, the case (or the hearing) is over, and the trier of fact must decide whether the moving party has proved his case or failed to prove it. Here, the magistrate believed that the movant had adduced a preponderance of evidence that Paul had acted with reckless disregard for the truth and held, merely, that the movant had met his burden of proof.

**5.** For the purpose only of deciding this motion, I will assume that the return of property would be an appropriate remedy for a violation of the Right to Financial Privacy Act.

reliance on these representations, Waters made copies of the documents and turned them over to the agents. He did not appear personally before the grand jury.

The subpoenaed bank records were used to obtain a warrant for the search of movant's safety deposit box at the Bank of Shorewood Hills. The materials were not presented to the grand jury. The district court was never informed that materials responsive to the grand jury subpoena had been disclosed to Agent Mueller.

From these facts, the magistrate conclude that the government had violated 12 U.S.C. § 3420, which provides in pertinent part:

Financial records about a customer obtained from a financial institution pursuant to a subpoena issued under the authority of a federal grand jury—

(1) shall be returned and actually presented to the grand jury;

(2) shall be used only for the purpose of considering whether to issue an indictment or presentment by that grand jury, or of prosecuting a crime for which that indictment or presentment is issued, or for a purpose authorized by Rule 6(e) of the Federal Rules of Criminal Procedure;

\* \* \* \* \* \*

The government contends that the magistrate read the provisions of § 3420(1) too strictly in requiring personal delivery to the grand jury by the custodian of financial records. It argues that the magistrate should have simply interpreted the statute according to its plain meaning and applied a common sense interpretation. A common sense interpretation is that someone other than the custodian will "obtain" the records to return and actually present them to the grand jury. The statute does not require the custodian to do the returning. Although the point is a close one, I am inclined to agree with the government. I do not find the language of the statute to be as clear as the government contends it is, but I have difficulty believing that Congress would have intended to impose on financial institutions the burden of sending

personnel to appear before grand juries that might be meeting hundreds of miles from the bank's location, simply to turn over financial records.

The magistrate read the statute and its legislative history as susceptible of no construction other than a requirement that the custodian return financial records to the grand jury in person. He quoted the legislative history:

The committee did adopt an amendment which requires that use of financial records obtained pursuant to a grand jury subpoena be *more strictly limited.* The amendment requires that the records be actually presented to the grand jury and used only for the purposes of the grand jury investigation, i.e. indictment and prosecution. [emphasis added]

House Report No. 95–1383; 1978 United States Code Congressional and Administrative News 9307. Also, he noted that a strict construction of § 3420 is consistent with the purpose of the Act, which imposes stringent limitations on government access to the customer records of financial institutions.

I agree with the magistrate that the Act should be construed strictly against the government, but I believe § 3420 may fairly be read as requiring that financial records subpoenaed by the grand jury be used only for the purposes enumerated in the statute to avoid misuse of grand jury subpoenas by prosecutors, rather than as requiring the custodian of the financial records to deliver them personally to a grand jury. The phrase "obtained from a financial institution" implies that the government may gain physical custody of financial records pursuant to a subpoena, subject to the requirement that the materials be returned and actually presented to the grand jury rather than used for other, unauthorized purposes by the prosecutor.

The only other court to have considered this question reached the same conclusion as the magistrate. However, it did not analyze the basis for its conclusion and thus, is not persuasive. *See In re Casti-*

*glione,* 587 F.Supp. 1210 (E.D.Calif.1984). I conclude that a fair reading of § 3420 does not lead to the interpretation urged by the movant that the custodian of financial records must be the person that actually presents those records to the grand jury.

In holding that the requirements of § 3420 may be met by having the custodian turn over subpoenaed documents to an authorized representative of the government, I do not intend to imply that the government's representative is authorized to do anything other than deliver the documents directly to the grand jury in the same condition in which the representative received them from the custodian. The movant has alleged in this motion and the magistrate has found as fact that agents Mueller and Shields used the documents to obtain a search warrant. My holding today does not address the legality of that action. That issue has not been briefed by the parties either before the magistrate or to this court.

I decline to adopt the recommendation by the magistrate and his proposed conclusions of law with respect to the government's alleged violation of § 3420, insofar as that violation is defined as being the turning over of subpoenaed financial records by the custodian to an authorized representative of the government for presentation to the grand jury in response to a grand jury subpoena.

### ORDER

IT IS ORDERED that the findings of fact proposed by the magistrate in what I construe as his recommendation of July 31, 1985, are ADOPTED as the court's own, except with respect to finding (7) that relates to Agent Paul's state of mind. Further, IT IS ORDERED that the conclusions of law proposed by the magistrate are not adopted as the court's own. His recom-

mendation to order the return of the seized property is DECLINED.[6]

The motions of David Lewallen for the return of property are DENIED.

---

6. In a memorandum submitted to the court on November 15, 1985, Lewallen argues that the seized materials should be returned whether they were legally or illegally seized in the first place, simply because they have been in the government's possession long enough for the government to have obtained all the information it needed from the materials. Since this is the first time that this argument has been raised, and the government has not had an opportunity to respond to it, I do not address it in this opinion.