UNITED STATES of America,
Plaintiff-Appellee,

v.

A RESIDENCE LOCATED AT 218 THIRD STREET, NEW GLARUS, WISCONSIN, Defendant.

Appeal of David R. LEWALLEN.
(Two Cases)

UNITED STATES of America,
Plaintiff-Appellee,

v.

ONE SAFE DEPOSIT BOX LOCATED AT the BANK OF SHOREWOOD HILLS, 810 Shorewood Blvd., Madison, Wisconsin, Defendant.

Nos. 85–3124, 85–3125.

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1986.

Decided Oct. 31, 1986.

Morris D. Berman, Giesen & Berman, S.C., Madison, Wis., for Lewallen.

John W. Vaudervil, Asst. U.S. Atty. (John R. Byrnes, U.S. Atty.), Madison, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

This appeal comes to us from the district court's denial of a motion by David Lewallen ("movant") to order the government to return certain seized property to him. The movant based his motion on two theories: (1) the search warrants used to seize his property were based on false statements by the affiant in violation of the standard set forth by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and (2) the procedure used to seize movant's bank records violat-ed 12 U.S.C. § 3420, which is a section of the Right to Financial Privacy Act of 1978 (12 U.S.C. §§ 3401 *et seq.*) (the "Act"). For the reasons set forth below, we affirm the decision below but remand for consideration of an issue not yet considered by the district court.

I

On November 13, 1984, a warrant was issued for the search of a residence located at 218 Third Street, New Glarus, Wisconsin. On November 14, 1984, a warrant was issued for the search of a safe deposit box at the Bank of Shorewood Hills, Madison, Wisconsin. These warrants, both of which were executed on November 14, 1984, were each based in part on the affidavit of Special Agent George Paul of the Internal Revenue Service. These searches were part of an investigation of movant regarding possible violations of several drug possession statutes (21 U.S.C. §§ 841, 843, 844, and 846), as well as several tax evasion statutes (26 U.S.C. §§ 7201, 7203, and 7206). These violations were connected since the movant allegedly failed to report taxable income realized from the sale of illegal drugs.

Agent Paul, as part of his affidavit, related how he had concluded that movant failed to file a tax return for 1983 by the deadline of October 15, 1984. This late deadline resulted from several extensions that movant had received from the Internal Revenue Service. On November 6, 1984, Agent Paul had contacted the Criminal Investigation Branch of the Internal Revenue Service Center at Kansas City, Missouri, to cause a search to be made to determine whether movant had filed a tax return for 1983. On that same day, Agent Paul received confirmation from the Center that movant had not filed a tax return for 1983 by October 15, 1984, as required, and that the return had still not been filed. This information formed the basis for Agent Paul's subsequent conclusion in the affidavit that movant had willfully failed to file his tax return for 1983 in violation of 26 U.S.C. § 7203.

However, movant in fact did file his return on or before October 15, 1984, and the government admits this. Moreover, the testimony of Mark Frank casts some doubt as to whether the Center actually told Agent Paul that movant's return was not timely filed, or if the Center did so, whether Agent Paul was justified in relying on this information. Frank telephoned the Internal Revenue Service Information Center and the Internal Revenue Service Public Affairs Department and inquired how long it would take to verify the date on which a tax return had been filed. He was told that it takes a minimum of four weeks for a return to pass through the system and appear on the computer. Frank's testimony implies that if movant had filed his return between October 10, 1984, and October 15, 1984, as he apparently did, then it would still not show up in the Center's computers on November 6, 1984, the date on which Agent Paul made his inquiry.

Movant bases his challenge to the Government's seizure of his property on the Supreme Court case of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674. *Franks* teaches that where a movant establishes by a preponderance of the evidence that (1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant made the false statement either knowingly and intentionally, or with reckless disregard for the truth; and (3) without the false statement the remainder of the affidavit is insufficient to establish probable cause, then the search warrant must be voided. *Franks,* 438 U.S. at 155–156, 98 S.Ct. at 2676–77; *United States v. Malsom,* 779 F.2d 1228, 1235 (7th Cir.1985); *Olson v. Tyler,* 771 F.2d 277, 281 (7th Cir. 1985); *United States v. Williams,* 737 F.2d 594, 602 (7th Cir.1984), certiorari denied 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). As noted above, both parties acknowledge that the statement that movant had not filed his tax return by October 15, 1984, is false. There is also little dispute that without this false statement, the remainder of the affidavit fails to establish probable cause that movant violated 26 U.S.C. § 7203 with respect to the tax year

1983. The sole dispute between the parties on this issue is whether Agent Paul made this statement in his affidavit with reckless disregard for the truth.

The standard of reckless disregard for the truth used in evaluating a challenge to a search warrant under *Franks* is analogous to the standard used in the context of First Amendment cases involving libel initially articulated by the Supreme Court in the landmark case of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *Williams,* 737 F.2d at 602. Therefore, cases subsequent to *New York Times* which flesh out the meaning of "reckless disregard for the truth" in the First Amendment context are relevant to understanding the meaning of the same phrase in the *Franks* context. Accordingly, an affiant acted with reckless disregard for the truth where he " 'in fact entertained serious doubts as to the truth of his' allegations." *Williams,* 737 F.2d at 602, quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968) (a Supreme Court case applying the *New York Times* standard); *United States v. Pritchard,* 745 F.2d 1112, 1116 (7th Cir.1984), certiorari denied, —— U.S. ——, 106 S.Ct. 860, 88 L.Ed.2d 899. Reckless disregard for the truth may also be proved inferentially "from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *Williams,* 737 F.2d at 602, quoting *St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326; *Pritchard,* 745 F.2d at 1116. Mere negligence by the affiant does not constitute reckless disregard for the truth. *Williams,* 737 F.2d at 602; see also *United States v. Costello,* 610 F.Supp. 1450, 1460 (N.D.Ill.1985).

An important factor in deciding this issue is the appropriate standard for us to apply in reviewing the district court's finding that the affiant did not make this statement with reckless disregard for the truth. The government urges, and movant does not dispute, that this finding by the district court cannot be disturbed unless it is clearly erroneous, and we have indeed applied

the clearly erroneous standard in prior cases applying *Franks.* *Malsom,* 779 F.2d at 1236; *Williams,* 737 F.2d at 602. However, both parties have neglected to discuss the impact, if any, of recent developments in the standard of review of the analogous reckless disregard for the truth finding in the First Amendment context. The Supreme Court has recently held that in reviewing a lower court's finding that a party made a statement with reckless disregard for the truth, "[a]ppellate judges must exercise independent judgment and determine whether the record establishes [reckless disregard for the truth] with convincing clarity." *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 514, 104 S.Ct. 1949, 1967, 80 L.Ed.2d 502 (1984). Since cases construing the reckless disregard for the truth standard in the First Amendment context are relevant to an understanding of the contours of the analogous standard in the *Franks* context, it could be argued that a change in the standard of review for the reckless disregard for the truth finding in the First Amendment context should likewise affect the standard of review for the analogous finding in the *Franks* context. To be sure, the analogy here is not perfect, since some of the reasons why the Supreme Court modified the standard of review in *Bose* were solely because of concerns unique to the First Amendment. In particular, the Supreme Court relied in part on the policy of making an independent examination of the record in First Amendment cases, *Bose,* 466 U.S. at 498–499, 104 S.Ct. at 1958–59, and the special constitutional values protected by the reckless disregard standard, *Bose,* 466 U.S. at 502, 104 S.Ct. at 517. However, the Supreme Court also relied on the fact that the reckless disregard for the truth standard requires "the evolutionary process of common-law adjudication" in order to be fully revealed, *Bose,* 466 U.S. at 502, 104 S.Ct. at 517, which applies with equal force to the reckless disregard for the truth standard in the *Franks* context. Also, this standard in the *Franks* context likewise protects important constitutional values—the necessity of demonstrating probable cause for a search

warrant to be issued. Nevertheless, since the parties failed to raise this issue, we continue to follow Seventh Circuit precedent and apply the clearly erroneous standard to the district court's finding that the affiant did not act with reckless disregard for the truth.

■ Given the legal standard and standard of review articulated above, we must affirm the district court's finding that Agent Paul did not act with reckless disregard for the truth. The key reason for this conclusion is that movant, who has the burden of proof, did not offer any direct evidence about Agent Paul's state of mind with respect to his conclusion in the affidavit that movant did not file a 1983 tax return. The government offered no evidence whatsoever, and movant's evidence, at most, shows that the Internal Revenue Service could not locate on November 6, 1984, a tax return filed between October 10, 1984, and October 15, 1984. This evidence does not show that Agent Paul in fact had serious doubts as to the ability of the Internal Revenue Service to locate a return filed three weeks earlier. See *Pritchard,* 745 F.2d at 1116; *Williams,* 737 F.2d at 602. Admittedly, one could infer that an experienced agent such as Agent Paul would be aware of the difficulties of locating a recently filed return and hence would be aware of the possible unreliability of the information that he received. But although reckless disregard for the truth may be proved inferentially, such a showing requires that movant demonstrate that affiant had obvious reasons to doubt the veracity of the information received. *Pritchard,* 745 F.2d at 1116; *Williams,* 737 F.2d at 602. It was not clearly erroneous for the district court to conclude that Agent Paul lacked such reasons.

The only remaining possibility for finding in movant's favor is that Agent Paul simply did not receive the information from the Internal Revenue Service that he said he did. However, there is no reason to select this inference over the inference that he did receive this information. Therefore,

both search warrants survive movant's *Franks* challenge.

## II

Movant also claims that the government violated 12 U.S.C. § 3420 which is part of the Act. In order to evaluate this claim, we must more thoroughly examine the facts surrounding the issuance of the second search warrant covering movant's safe deposit box.

At approximately 9:15 AM on November 14, 1984, Special Agent Dale G. Mueller of the Federal Bureau of Investigation and Agent Ray Shields of the Internal Revenue Service presented a grand jury subpoena to a cashier at the Bank of Shorewood Hills, Madison, Wisconsin. In accord with the subpoena, at 10:00 AM the same day in the grand jury room of the district court, this cashier appeared with records pertaining to the rental of the safe deposit box by movant. The agents told the cashier that he would satisfy the subpoena by giving copies of the documents to the agents, and the cashier did so. The agents then used these subpoenaed bank records to obtain a search warrant for movant's safe deposit box at the Bank. Agent Mueller then executed the search warrant at 3:00 PM the same day. There is no evidence whether these bank records have ever been presented to a grand jury; apparently the investigation of movant is still ongoing. It is clear, though, that the Bank itself did not directly present the records to the grand jury.

The Act in general represents a compromise between a bank customer's right of privacy in his financial records and law enforcement agencies' need to obtain financial records pursuant to legitimate investigations. See H.R.Rep. No. 1383, at 33–34, reprinted in 1978 U.S.Code Cong. & Ad. News 9273, 9305–9306; *United States v. Frazin*, 780 F.2d 1461, 1465 (9th Cir.1986); *Spa Flying Service, Inc. v. United States*, 724 F.2d 95, 96 (8th Cir.1984). The Act is in part a response to the Supreme Court's rejection of the proposition that a bank customer has a constitutional right of privacy in his financial records in the case of

*United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). See H.R. Rep. No. 1383 at 34, reprinted in 1978 U.S.Code Cong. & Ad.News 9273, 9306; *Frazin*, 780 F.2d at 1465. The section of the Act at issue here, Section 3420, regulates the process by which financial records are transferred from a financial institution to a grand jury.

Movant claims that Section 3420 requires a representative of the financial institution to deliver personally the subpoenaed records to the grand jury without any handling by intermediaries. Movant therefore claims that the agents violated Section 3420 by having the cashier give copies of the subpoenaed documents to them. We reject movant's construction of Section 3420.

The plain language of the statute, which is always the starting point for any statutory construction, does not resolve this issue. Section 3420 provides, in pertinent part, that

> Financial records about a customer obtained from a financial institution pursuant to a subpoena issued under the authority of a Federal grand jury—
>
> (1) shall be returned and actually presented to the grand jury.

The statute does not say that a representative from the financial institution must present the records to the grand jury. Rather, the statute is written passively and states only to whom the records must be presented (the grand jury), without specifying who must do the act of presentment. The legislative history contains the same passive language ("The amendment requires that the records be actually presented to the grand jury") and is thus of no additional help. See H.R.Rep. No. 1383, at 35, reprinted in 1978 U.S.Code Cong. & Ad.News 9273, 9307. We are therefore left to construe the language in the most reasonable fashion so as to best effectuate Congressional intent. See *Federal Deposit Insurance Corp. v. Elefant*, 790 F.2d 661, 666 (7th Cir.1986).

We hold that the most reasonable construction of Section 3420 is not to require personal delivery of the subpoenaed

records by a representative of the financial institution. Congress hardly intended to impose the potentially great burden on financial institutions of sending their own personnel to distant grand juries merely to deliver subpoenaed records. Congress did intend to safeguard the privacy rights of bank customers in their financial records. So long as the use of these records is strictly limited, as it is under the remainder of Section 3420, our construction of the statute today meets this intent in the most reasonable fashion.

Movant argues that Section 3415 of the Act, which reimburses financial institutions for various expenses incurred in observing the Act, would alleviate any financial burden created by sending personnel to distant grand juries. He therefore concludes that Section 3415 supports his construction of Section 3420. We disagree. Section 3415 provides, in pertinent part, that

> * * * a Government authority shall pay to the financial institution assembling or providing financial records pertaining to a customer and in accordance with procedures established by this chapter a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, reproducing or transporting books, papers, records, or other data required or requested to be produced.

Section 3415 may shift the burden of the cost incurred by a financial institution when it loses an employee for a day when he must travel to a distant jury. However, having the government bear this expense does not alter the fact that movant's construction still creates this real cost.

Movant cites *In re Castiglione*, 587 F.Supp. 1210 (E.D.Calif.1984), as support for his construction of Section 3420. This case is apparently the only case in the country addressing this statutory construction issue. While *Castiglione* supports movant's construction, its reasoning is not persuasive. There the court simply stated in a conclusory fashion that the statute "clearly" requires a designated representative of the financial institution to appear personally and deliver the records to the grand jury, without engaging in any of the statutory analysis described above. *Castiglione*, 587 F.Supp. at 1212. In our view the question is far from obvious. Given the *Castiglione* court's lack of reasoning, we adhere to our construction of Section 3420 and therefore reject movant's claim that the agents violated Section 3420 by functioning as intermediaries between the Bank and the grand jury.

Movant also claims that the agents violated Section 3420 when they used the subpoenaed bank records to obtain the search warrant for the safe deposit box. The district court stressed that its holding did not address the legality of this action by the agents. The court did not address this issue because it claimed that this issue was not briefed before either the magistrate or the court. *United States v. A Residence Located at 218 Third Street*, 622 F.Supp. 908, 915 (W.D.Wis.1985). However, an examination of the record reveals otherwise.

There were two full sets of briefs filed before Magistrate Groh: one set prior to his order granting a hearing and one set subsequent to this order. Movant raised this issue in both sets of briefs. Moreover, if there was any doubt as to the adequacy with which movant raised this issue, see *National Metalcrafters v. McNeil*, 784 F.2d 817, 825 (7th Cir.1986), such doubts are eliminated by the magistrate's order entered April 17, 1985, granting a hearing on movant's motion to return the seized property. In outlining the issues raised by movant under Section 3420, the magistrate stated that one of movant's contentions is that "the bank records were improperly used to obtain the search warrant," and referred to this contention again in a subsequent paragraph. This issue was listed by the magistrate as separate and distinct from the issue already addressed by this Court today, namely that the search was illegal because the documents were not presented personally to the grand jury by a representative of the financial institution. R. 15. Magistrate Groh did not address this issue in his report and recommendation

to the district court, but this was only because he found for movant on his first claim (the presentment issue) under Section 3420 and therefore did not have to reach this other issue raised under Section 3420. R. 35. In its subsequent brief filed before the district court, movant's discussion at page 15 of his brief was sufficient to preserve this issue.

We therefore conclude that the district court erred in holding that movant had waived this issue. The court should have addressed the merits of this issue. Since we lack the valued views of the district court on this important issue, we remand to allow the parties and the district court to address the propriety of the agents' use of the subpoenaed bank records to obtain a search warrant for the safe deposit box. In all other respects the decision of the district court is affirmed.