The appellant, Brad Haywood Sims, was convicted of distributing a controlled substance, cocaine, in violation of § 13A-12-211, Code of Alabama 1975. He was sentenced to 10 years in prison. The sentence was split, with three years to be served in prison and the remainder on probation. The instant appeal is the result of the appellant's second trial. The appellant's first *Page 1273 
trial ended in a mistrial with the jury unable to reach a verdict.
The evidence tended to show that as a result of a search warrant executed on the appellant's house, $360.00 in marked bills was discovered. These bills had been given to a confidential informant so that he could purchase cocaine. A total of $932.00 was recovered from the appellant's home. The appellant raises eight issues on appeal. However, since this case must be reversed, we address those issues which merit a reversal.
 I
The appellant initially contends that the trial court erred in not suppressing the evidence recovered in his home since his home was searched as a result of a warrant, which, he argues, contained false statements in the affidavit supporting the warrant. The affidavit accompanying the warrant reads as follows:
 "That a confidential and reliable informant, hereinafter referred to as 'A' observed a quantity of an off-white rocky substance which appeared to 'A' to be 'crack' cocaine being stored in the residence located at 3437 Perry Street, Montgomery, Alabama, within the past seventy-two (72) hours.
 "Further probable cause being that 'A' witnessed crack cocaine being sold out of the residence located at 3437 Perry Street during the month of September.
 "Further probable cause being that 'A' has given the affiant information in the past which has been proven true through investigative means.
 "Further probable cause being that 'A' has assisted the Narcotics Intelligence Bureau in numerous investigations which have resulted in numerous arrests.
 "Further probable cause being that the power for the residence at 3437 Perry Street is in the name of Brad Sims.
 "Further probable cause being that intelligence information obtained by Narcotics Intelligence Bureau personnel indicates that Brad Sims is involved in illegal narcotics activity.
 "As Brad Sims is a member of the Montgomery Police Department and is therefore most likely armed with at least a Police Department issue 9mm automatic pistol, a no-knock clause is being requested in this warrant for officer safety.
 "The foregoing is based on personal knowledge of the affiant and on facts obtained by the Narcotics and Intelligence Bureau, Administrative Division, Montgomery Police Department. . . ."
The appellant maintains that Officer Lay, who executed the affidavit in support of the warrant, made several misrepresentations to the magistrate in order to obtain the warrant. The appellant contends that the sections of the affidavit underlined above were false. Specifically, he cites Lay's testimony at the suppression hearing in which Lay stated that the confidential informant, Julius Moore, stayed in the car and never went into the Sims residence. Lay further stated at the suppression hearing that the informant did not witness any drug transaction because he remained in the car. The appellant contends that the informant did not have any personal knowledge of the facts testified to in the affidavit and that the informant was relying on information supplied to him by another individual, Eric Johnson, who the appellant identifies as a known drug dealer. This fact was not stated in the affidavit or told to the magistrate.
The following occurred during the cross-examination of Officer Lay:
 "Q [Defense Counsel] — Now, isn't it true that Julius Moore stayed out in the car and never went into the home of Brad Sims during the time of this so-called transaction between Eric Johnson and Brad Sims?
"A — Yes, sir.
". . . .
 "Q — Isn't it true, sir, that Julius Moore told you that he stayed out in the car *Page 1274 
during the time that Eric Johnson went in to see Brad Sims about drugs?
"A — Yes, sir.
 "Q — Were you also within the area at the time the red Saab driven by Julius Moore was waiting outside?
"A — No, Sir.
". . . .
 "Q — He didn't see any drugs either at the house or outside the house — Let me rephrase it. Isn't it true Julius Moore, whom you have identified as A, never observed any drugs, crack or any substance, being stored in the residence at 3437 Perry Street?
"A — No, sir. He did not go in the residence.
". . . .
 "Q — Isn't it true, sir, that Julius Moore never personally saw Eric Johnson hand any money to Brad Sims?
"A — Yes, sir. . . ."
The United States Supreme Court, in Franks v. Delaware,438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), recognized the importance of the veracity of the statements made in the affidavit to support a search warrant. "The Achilles' heel of any warrant is the presence of probable cause for the same; and this, in turn, can be resolved only by resort to the supporting affidavit. . . ." E. Mascolo, Impeaching the Credibility ofAffidavits for Search Warrants: Piercing the Presumption ofValidity, 44 Conn.Bar.J. 9 (1970). "The veracity of the assertions supporting probable cause is integral to the criminal justice system." United States v. Cortina,630 F.2d 1207, 1213 (7th Cir. 1980). The warrant clause itself takes the affiant's good faith as its premise. See Cortina, 630 F.2d at 1213.
The United States Supreme Court, in Franks, stated that an individual could challenge the truthfulness of the material in the affidavit. See also Richardson v. State, 376 So.2d 205
(Ala.Cr.App. 1978), aff'd, 376 So.2d 228 (Ala. 1979). Relying on the Fourth and Fourteenth Amendments, the Supreme Court stated:
 "Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."
Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676; See also Moore v.State, 570 So.2d 788 (Ala.Cr.App. 1990); Villemez v. State,555 So.2d 342 (Ala.Cr.App. 1989); Gray v. State, 507 So.2d 1026
(Ala.Cr.App. 1987).
The Supreme Court went further in Franks to say:
 " '[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful showing' (emphasis in [Halsey]). This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."
Franks, 438 U.S. at 164-65, 98 S.Ct. at 2681, quoting UnitedStates v. Halsey, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966). *Page 1275 
Initially, we must determine whether the statements made in the affidavit were made either intentionally or with reckless disregard for the truth. "We know what intentional lies are, but the meaning of 'reckless disregard for the truth' is not self-evident. . . ." United States v. Williams, 737 F.2d 594,602 (7th Cir. 1984), cert. denied, 470 U.S. 1003,105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). An affiant acts with "reckless disregard for the truth where he ' "in fact entertained serious doubts as to the truth of his" allegations.' . . . Reckless disregard for the truth may also be proved inferentially 'from circumstances evincing "obvious reasons to doubt the veracity" of the allegations.' " United States v. A Residence Located at218 Third Street, 805 F.2d 256, 258 (7th Cir. 1986). "Because states of mind must be proved circumstantially, a factfinder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations."Williams, 737 F.2d at 602.
When an appellate court reviews a ruling by a lower court on a question concerning whether an individual made a statement with reckless disregard for the truth " '[a]ppellate judges must exercise independent judgment and determine whether the record establishes [reckless disregard for the truth] with convincing clarity.' " A Residence Located at 218 Third Street, 805 F.2d at 259, quoting Bose Corp. v. Consumers Union ofUnited States, Inc., 466 U.S. 485, 514, 104 S.Ct. 1949, 1967,80 L.Ed.2d 502 (1984). It is clear after a review of the hearing that the complained-of statements were made with at least a reckless disregard for the truth. The informant, upon whom Lay based his information, did not enter the home of the appellant and did not witness a drug transaction. Another individual, identified as Eric Johnson, was said to have entered the residence and to have made the buy at the residence. However, none of this information is stated in the affidavit and it was not told to the magistrate. Indeed there is no information as to the veracity of Eric Johnson. "Unlike an officer in the field, a magistrate must be presented with facts as to the source of the information in the affidavit and the underlying circumstances from which it could be concluded that the source was reliable." United States v. Kirk,781 F.2d 1498, 1505 (11th Cir. 1986). The misrepresentations made by Officer Lay resulted in his committing two offenses: "[o]ne against the constitutional guarantee against unreasonable searches, and a second against the judicial system." Cortina, 630 F.2d at 1213.
The underlined portions must be deleted from the affidavit. We must then determine whether probable cause still exists.Moore, supra; Villemez, supra. (For a thorough discussion of the case law on misstatements made in an affidavit supporting a warrant, see 24 A.L.R.4th 1266; W. LaFave, 2 Search and Seizure
§ 4.4(c) (2d ed. 1987). In this case, after we delete the misrepresented portions from the affidavit, no probable cause exists. Probable cause deals with probabilities. "They are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328,76 L.Ed.2d 527 (1983). The probable cause test "requires 'a practical, commonsense decision whether, given all the circumstances set forth in the affidavit,' id. 462 U.S. at 238,103 S.Ct. at 2332, there is probable cause to believe the suspect committed an offense." United States v. Colkley,899 F.2d 297, 301-02 (4th Cir. 1990).
Thus all the evidence discovered as a result of the search of the appellant's house was due to be suppressed.
 II
The appellant next contends that he was deprived of his right to equal protection under the law due to the prosecution's discriminatory exercise of peremptory challenges.
The record shows that 16 members of the 48-member venire were black and that of *Page 1276 
the state's 18 strikes, 14 were used to strike black veniremembers. The appellant, relying on Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objected to the prosecution's use of peremptory challenges, claiming that they were discriminatory in nature. The trial court then required the state to explain its use of peremptory strikes. We have previously concluded that where a trial court has made no express finding that a prima facie case of discrimination has been established but nonetheless requires a prosecutor to explain its peremptory challenges, this court will consider such a finding to be implied and will proceed directly to evaluate the prosecution's explanations. Williams v. State,548 So.2d 501 (Ala.Cr.App. 1988); Currin v. State, 535 So.2d 221
(Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988). See alsoUnited States v. Forbes, 816 F.2d 1006 (5th Cir. 1987).
When explaining the basis for its peremptory strikes of blacks, the prosecution must offer a clear, specific, and legitimately race-neutral reason for each strike.Batson, supra, at 97, 106 S.Ct. at 1723; Ex parte Branch,526 So.2d 609, 623 (Ala. 1987). In the instant case, several of the veniremembers who were struck had previous misdemeanor convictions and two others stated that they had received "unjust traffic tickets." We consider these strikes to have been nondiscriminatory. See Jackson v. State, 549 So.2d 616
(Ala.Cr.App. 1989) (several prior convictions of juror is a valid race-neutral reason); Powell v. State, 548 So.2d 590
(Ala.Cr.App. 1988), aff'd, 548 So.2d 605 (Ala. 1989) (dissatisfaction with police is a valid race-neutral reason). The reasons offered by the prosecutor for her remaining strikes present serious doubts to this court as to their validity. Those strikes are as follows:
 "Juror number 81, [J.M.] lived on Early Street where the police had answered a call, and this particular neighborhood has been identified as a high crime area, in particular, drugs.
 "Juror number 25, [H.W.]. Our information there — and I personally observed [H.W.] in court chewing gum, not only during individual voir dire, but during the general voir dire. She was extremely soft-spoken, and it was extremely difficult for me to hear. She was very hesitant in her responses to the question, in particular to the question I asked about what she had heard and what was her opinion about any prior proceedings. My opinion was that she did not want to discuss that, and perhaps, had further knowledge she did not divulge.
 "Juror number 19, Ms. [R.B.]. [R.B.'s] attitude appeared to be extremely sad. I was concerned about her desire to be of service in this court. She had a very depressed look about her face. Further, Officer Jones identified her home area of Riviera Road as being that of a high crime area, in particular, drugs.
 "Juror number 75, Ms. [C.]. Ms. [C.] indicated she — or did not indicate that she heard anything about this case. She came to court, and the best judgment I could make Your Honor, she sat towards the middle rear. She had glasses on. They appeared to be darkly tinted. I could not tell if it was for [medical] reasons or if it was because she had worn sunglasses in the courtroom. Because of the numerous exhibits and documents, blow-ups, and other things, I could not take a chance on whether or not she had a vision problem, or contrary to most people, wore sunglasses indoors."
The trial court accepted these reasons as valid. In viewing the prosecutor's actions as a whole, we consider that these challenges of black veniremembers were not based on sound race-neutral grounds. This court may "reverse a trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination only if that determination is clearly erroneous." Parker v. State,568 So.2d 335, 338 (Ala.Cr.App. 1990).
Several of the reasons that the prosecutor gave for striking prospecutive jurors were that they lived in high crime areas. See above for reasons given for *Page 1277 
striking jurors numbers 81 and 19. (We note that one white juror who served on the jury was from a neighborhood with a higher crime rate than the average neighborhood in Montgomery.) We do not believe that this reason alone is a sufficient race-neutral reason.
 " '. . . [T]he bare fact that [the venireperson] lived in a high crime area does not warrant the assumption that [that person] would be less interested in law enforcement or would be intimidated by appellant.' Williams, 548 So.2d at 506. ('A few simple questions addressed to this venireperson on voir dire would have cleared up any doubt concerning the matter, but they were not asked.')"
Warner v. State, [Ms. 3 Div. 945, February 23, 1990], 1990 WL 44302, *6 (Ala.Cr.App. 1990).
The prosecutor further stated that the reason she struck juror number 75 is that she wore darkly tinted glasses and that she did not know whether she needed the glasses for medical reasons. Here again, the prosecutor could have dispelled her doubts by asking further questions on voir dire. " ' "A prosecutor's failure to engage black prospective jurors 'in more than desultory voir dire, or indeed to ask them any questions at all,' before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias." People v. Turner, 42 Cal.3d 711,726 P.2d 102, 111, 230 Cal.Rptr. 656 (1986).' " Parker, 568 So.2d at 337, quoting Avery v. State, 545 So.2d 123, 127
(Ala.Cr.App. 1988).
Additionally, we reject the propriety of the prosecutor's striking of juror number 25. The prosecutor stated that this juror was struck because she was chewing gum and was very soft-spoken. We realize that the demeanor of a juror may be a sufficiently race-neutral reason in some instances, although it presents great difficulty to the reviewing authorities.Avery, 545 So.2d at 127.
The record also contains testimony at the Batson hearing from several local attorneys. These attorneys had participated in trials prosecuted by the same assistant district attorney as the one in the present case. All of the attorney-witnesses testified that in each instance, the prosecutor had excluded approximately 80% of the black veniremembers. See Powell v.State, 548 So.2d 590 (Ala.Cr.App. 1988), aff'd on other grounds,548 So.2d 605 (Ala. 1989); Williams, supra; Warner, supra. We cite Judge Bowen, in Warner, stating:
 "In considering this issue, we have taken note of the fact that the State in this case does not write on a clean slate. A number of cases prosecuted in Montgomery County have been reversed because of a Batson violation. Powell v. State, 548 So.2d 590 (Ala.Cr.App. 1988), affirmed on other grounds, 548 So.2d 606 (Ala. 1989); Williams v. State, 548 So.2d 501 (Ala.Cr.App. 1988); Acres v. State, 548 So.2d 459 (Ala.Cr.App. 1987). This consideration is a relevant factor in our review. United States v. Hughes, 864 F.2d 78, 80 (8th Cir. 1988). In view of this fact and the fact that the chief deputy district attorney testified that she 'highly expected' that she would have to justify her peremptory challenges against blacks with racially neutral reasons, we are somewhat puzzled by some of the very weak justifications given by the State."
Warner, 1990 WL 44302, at *8. The same prosecutor involved in the present case, was also involved in Powell, Williams,Warner, and Parker. Of these cases, three were reversed forBatson violations.
We note that many of the traits exhibited by the black veniremembers and given as reasons for challenging them were also exhibited by white members who went unchallenged by the state. The fact that two blacks actually sat on the jury is not proof that no racial discrimination occurred. United States v.Young-Bey, 893 F.2d 178, 180 (8th Cir. 1990); Mitchell v. State,579 So.2d 45 (Ala.Cr.App. 1991). " '[T]he removal of even one juror for a discriminatory reason is a violation of the *Page 1278 
equal protection rights of both the excluded juror and the minority defendant.' " Parker, 568 So.2d at 338 quoting,Harrell v. State, 555 So.2d 263, 267 (Ala. 1989). We find sufficient evidence from the record to indicate "disparate treatment" by the prosecutor between black members of the venire and its white members. Mitchell, 579 So.2d at 47;Branch, 526 So.2d at 624.
As stated above, this court may reverse the trial court's determination that the state's peremptory challenges were not motivated by intentional racial discrimination only if the trial court's determination was "clearly erroneous".Mitchell, 579 So.2d at 50; Branch, 526 So.2d at 625. The United States Supreme Court recently stated in Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), that:
 "A prosecutor's wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause."
Powers, ___ U.S. ___, 111 S.Ct. at 1371.
We find therefore, that the prosecutor's challenges of the above venire-members was so racially discriminatory and that it so tainted the proceedings that the appellant's right to equal protection was denied and he did not receive a fair trial. Accordingly, the trial court erred in denying appellant'sBatson motion.
For the reasons as stated above in parts I II, this case is reversed and remanded to the Circuit Court for Montgomery County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur