531 So.2d 37 (1987)
Julius NESBITT
v.
STATE.
1 Div. 431.
Court of Criminal Appeals of Alabama.
June 9, 1987.
Rehearing Denied July 28, 1987.
Certiorari Denied November 20, 1987.
On Return to Remand August 23, 1988.
*38 Lynn E. Quinley, Daphne, for appellant.
Don Siegelman, Atty. Gen., and Gerrilyn V. Grant, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-1423.
TYSON, Judge.
Julius Nesbitt was charged by indictment with the first degree theft of certain property belonging to one John Maye in violation of § 13A-7-7, Code of Alabama 1975.
At trial the appellant was found "guilty of the offense of third degree burglary" by the jury and sentenced, following a sentencing hearing, to 20 years' imprisonment as a habitual felony offender and ordered to pay $25 to the Alabama Crime Victim's Compensation Fund.
Daphne, Alabama Police Officer Donald Bettner stated that, on the night of July 17, 1986, he was called to investigate an alleged burglary at the residence of one John Maye, who lived on the south side of Pollard Street in Daphne, Alabama. Upon arrival, Maye advised Officer Bettner that someone had entered his mobile home, that the coffee table was overturned, a VCR, a stereo and a black and white television had been removed. Further, a framed photograph of his son, which contained some cash, also was taken. On the kitchen table adjacent to the window was a blanket which did not belong to Mr. Maye. Maye lived at this address with his common law wife, one Idell Rudolph. The officer noted some footprints on the ground outside the window which appeared to be made by "tennis type" shoes. He endeavored to lift these.
Shortly thereafter he talked with a neighbor, Joel Bradley, who stated that he had seen a brown Chevrolet Nova between 12:00 and 1:00 o'clock on July 17, 1986, pull into Maye's yard and later drive off and that he recognized the driver. He stated that the automobile belonged to one Eugenia Reed but he did not give the officer the tag number.
Officer Bettner then drove to the residence of Eugenia Reed and observed the brown Chevrolet Nova and wrote down the tag number. He then knocked at the door and talked with Ms. Reed, who identified the blanket which had been taken from the home of John Maye by the officer, as belonging to her and that she had left it in the trunk of the automobile. She stated that she had not been anywhere in her car that day but had lent her automobile to Julius Nesbitt who lived with her. She was asked to open the trunk of the vehicle and inside was a piece of plastic which was a part of the top of a turntable which belonged to a stereo set.
This item of plastic was identified as State's Exhibit 2 and the blanket in question was Exhibit 1.
A set of fingerprints belonging to appellant, Julius Nesbitt, was then identified by Officer Bettner. Bettner stated he arrested appellant after first advising him of his Miranda rights. Officer Bettner identified the appellant in court as the party he arrested and whose fingerprints he had taken that date.
John Maye stated that on July 17, 1986, he lived on Pollard Street in Daphne, Alabama; that he left for work at about 9:00 in the morning and got home something after 5:00 o'clock in the afternoon. When he unlocked the door he saw that the window was open and his stereo, VCR and his son's picture, which had a five dollar bill in it, were gone. He identified the plastic stereo top as being the top of his stereo. He stated that he spoke to a neighbor named Joel Bradley who told him of seeing a brown Chevrolet Nova parked in front of the house and then, later, drive off; that Bradley recognized the car as belonging to one Eugene Reed. He stated he then gave this information to Officer Bettner. Maye stated that he later visited the jail in Daphne and talked with Julius Nesbitt, the appellant, whom he positively identified in court.
From the record: (R. 52-54)
"Q. Did you have an occasion to talk to Mr. Nesbitt after he had been arrested and was being detained?
"A. Oh, yeah.
"Q. Where was that?
"A. In the Daphne jailhouse.

*39 "Q. What was the purpose of your conversation with him?
"A. Well, really, I wanted to know what he did with my son's picture because we had lost him a couple of weeks before Christmas.
"Q. Okay. You said, `your son's picture,' did you also have a picture missing from the house?
"A. Yeah, the one that $5 was in it.
"Q. Your son?
"A. Step-son.
"Q. Your step-son? Was anyone else present when you were talking to Mr. Nesbitt?
"A. No.
"Q. Were any law enforcement officers present when you talked with him?
"A. They was up in the front.
"Q. They weren't there in the conversation with you?
"A. No.
"Q. What did Mr. Nesbitt tell you?
"A. Well, I asked him first if he did it and he said, `no'. And then I asked himit had to be him or his girlfriend because finding stuff in the trunk of her car, it wasn't but the two of them that drove the car. So she was at work so he had to have the car. So when I got ready to walk off, he told me, `Wait a minute.' And then he told me that he was sorry for doing it and that he needed the money to buy some drugs with.
"Q. Did he tell you that he had done it?
"A. Yep.
"Q. That he had taken those items?
"A. Uh-huh."
Joel Bradley, a neighbor of John Maye, stated that he was at his home on Pollard Street in Daphne on July 17, 1986. He recognized a brownish-gold Chevrolet Nova belonging to Eugenia Reed drive by and saw it pull up at the residence of John Maye. He later saw the car drive off somewhere around 1:00 o'clock. He stated that it was a clear day and that he recognized the appellant driving off in the car.
Marietta Prevost testified that she was a latent fingerprint examiner for the Alabama Department of Public Safety. She stated that she had examined many, many fingerprints over her career and found 11 points of comparison which she lifted from State's Exhibit 2 and compared these with the known fingerprints of the appellant and that they were a match.
James L. Small, an employee of the Alabama Department of Forensic Science, stated that he had in his possession on October 6, 1986 until the date of trial, a piece of plastic together with some small bits of plastic which had been delivered to him by Daphne Officer Bettner. Upon examination of the bits of plastic and the larger piece, he found that they were a "perfect fit" when put together.
Eugenia Reed testified that on July 17, 1986, she lent her brown Chevrolet automobile to Julius Nesbitt, this appellant, and she did not see it again until later that same night.
The appellant's motion for judgment of acquittal alleging that the State failed to prove a prima facie case of burglary in the third degree was overruled by the trial court.
The appellant called Eugenia Reed who testified that Idell Rudolph, the common law wife of John Maye, was her aunt. She also admitted that the appellant, Julius Nesbitt, was living with her, but insisted that the blanket that was placed in evidence had been left in the trunk of her automobile when she gave the keys to Nesbitt.
The appellant renewed his motion for judgment of acquittal, which was denied.

I
The appellant avers that the trial court improperly accepted the District Attorney's explanation for striking two black persons from the jury venire from which the petit jury was selected.
Counsel for appellant calls this court's attention to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and Ex Parte Jackson, 516 So.2d 768 (Ala.1986).
*40 The following colloquy took place just prior to trial: (R. 5-6)

"PROCEEDINGS
(Whereupon, the following Proceedings were had on October 8, 1986:)
"THE COURT: Just let the record show that prior to the time the Jury was sworn in that the Court asked the attorneys for the various parties if there were any problems with the selection of the Jury with the exclusion of any persons of the black race, in that the Defendant is black. And the attorneys for the Defendant wanted to know the reason why the State had struck Number 61 and 76.
"MR. FLOYD: Number 61, Rupert Pruitt, we had reason to believe that he has been involved as a Defendant in a District Court action in Baldwin County. We felt that this was in the State's best interest as that he may be prejudiced towards the State because of possible actions pending against him. But we did not feel it was sufficient to challenge him for cause and, therefore, exercised one of our strikes.
"The other juror was Joseph Thompson, an elderly black man, and as the jury venire was being questioned, it appeared he was inattentive and we felt he might not possibly be able to properly stay in touch with the proceedings as they went on and that he could possibly not hear all of the evidence as it was presented.
"MR. WILTERS: Judge, we would also like the record to show that two people of the black race are on the Jury.
"MR. FLOYD: And we would also like the record to show that a fifth person in the jury venire was struck by Defendant's counsel.
"THE COURT: Well, I find the reasons acceptable and I am going to swear the Jury in.
"(Jury in.)
"(Jurors sworn.)"
This court has carefully examined the above record and finds no infringement of appellant's constitutional rights through the striking of the two jurors hereinabove set forth. It is readily apparent that a "race neutral" explanation was given as to both individuals. Juror Pruitt had a pending criminal proceeding and Juror Thompson was elderly and appeared to be inattentive and, moreover, had some difficulty hearing. Further, two black persons remained on the trial jury and a fifth was struck by appellant's counsel. We find no violation of appellant's constitutional rights as shown by this record. See Tinsley v. State, 507 So.2d 1004 (1986).

II
Appellant next asserts that the trial court violated Rule 18.5 of the Alabama Temporary Rules of Criminal Procedure by failing to require the State to fully comply with his motion for discovery filed in this cause.
In response to the appellant's objection and motion (R. 11-15) as herein noted, the trial court inquired as to the State's position. The State then explained that certain pieces of plastic had been in the possession of the Department of Forensic Sciences and had only been delivered to the District Attorney's office on the morning of trial. The court then inquired if the appellant would like some time to examine this and any fingerprint records.
From the record: (R. 13-16)
"Your Honor, we can understand Ms. Quinley's position as to possibly wanting to view these documents or these pieces of evidence. However, we would like to advise the Court that it is not something that we have had for several months but it is something that we have just received this morning and we will be glad to give Ms. Quinley ample time to look at these pieces of evidence if she chooses. We do not feel omission from the case is a proper remedy for the situation.
"THE COURT: Well, if they haven't had the stuff, it seems like a drastic remedy to exclude it. How much time would you need to examine the items?
*41 "MS. QUINLEY: I would estimate 20 to 30 minutes depending on what all they have.
"MR. FLOYD: Your Honor, we have one blanket that was retrieved at the home of the victim that came out of the Nova that Mr. Wilters talked about that we expect to tie into the Defendant and his girlfriend, owned by his girlfriend and driven by the Defendant.
"THE COURT: So we are talking about a blanket and what else?
"MR. FLOYD: Pieces of plastic which make the top to a stereo unit which were found in the trunk of the girlfriend's vehicle and had fingerprints of the Defendant on it. And also the latent print that was taken by the Department of Public Safety fingerprint lab and matched to the Defendant's fingerprints through the fingerprint card that he gave which is also going to be introduced into evidence and has been in possession of the Daphne Police Department until the police officer brought it with him today. And I believe Ms. Quinley has been in touch with the police officer. I don't know what about but I understand that she has talked with him. But I have no idea what they talked about.
"THE COURT: I don't find that the State has concealed anything.
"MS. QUINLEY: Your Honor, for the record, I would like to further state that regardless of whether or not this alleged evidence has been in the possession of the District Attorney's Office or in the possession of the Daphne Police Department, specifically Officer Bettner, if the State was aware that these items existed and that they were in his possession, I believe that they were under a duty to disclose that to the Defendant so we could have gotten in touch to specifically ask Officer Bettner or other custodians of evidence at the Daphne Police Department to make those items available to the defense for inspection prior to trial.
"THE COURT: Well, I understand the Defendant's position but I don't think that the conduct of the District Attorney's Office in relation to the order entered by the Court on October the 2nd is of such character that it warrants excluding the evidence.
"I am going to grant the Defendant will twenty minutes be enough time to look at the toxicologist's report?
"(Whereupon, an off-the-record discussion was had.)
"THE COURT: Well, I'll give you any length of time that you need.
"MS. QUINLEY: Your Honor, I think 30 minutes would be sufficient.
"(Whereupon, a short recess was had.)"
As may be seen, appellant's counsel requested some 20 minutes to examine these items and a recess for this purpose. The trial court granted this, indicating that it would give such length of time as might be needed by counsel. Appellant's counsel then stated that 30 minutes would be sufficient. (R. 16) No further objection appears in the record.
For aught that appears, counsel had adequate time to examine the pieces of plastic and fingerprint records which were brought in by the Department of Forensic Science on the morning of trial. There is no further objection or motion contained in this record.
The prosecution's explanation was straightforward and no effort was made to conceal or prevent the defendant or counsel from examining the matters in question.
In light of the record as presented, we find no error. Clemons v. State, 491 So.2d 1060 (Ala.Crim.App.1986).

III
Appellant's counsel next asserts that the trial court erred in refusing to give two written requested charges (refused charges 1 and 4) dealing with criminal trespass as a lesser included offense of burglary in the third degree. Counsel cited to the trial court and to this court Womack v. State, 462 So.2d 1020 (Ala.Crim.App.1984).
In Womack, the appellant was arrested inside the premises in question. The evidence in this cause showed affirmatively that the victim's home was entered by the appellant who illegally removed a stereo, a
*42 VCR, a television and a picture of the victim's son which contained $5.00. Moreover, the appellant himself admitted to the victim, John Maye, that he took these items because he needed money to buy drugs. (R. 53).
It is clear that the trial court correctly determined that there was no evidence to support a lesser charge of criminal trespass in either the second or third degree. Williams v. State, 474 So.2d 178 (Ala.Crim. App.1985) and authorities therein cited.

IV
Finally, appellant's counsel calls attention to the sentencing hearing and the fact that, at such hearing, the State offered to prove that the appellant was a habitual felony offender within the meaning of the Alabama Habitual Felony Offender Act through the use of three alleged Ohio prior convictions.
Appellant's counsel argues three matters in connection with this. One, the failure to give proper notice pursuant to the provisions of Tit. 13A-5-9, Code of Alabama 1975; two, the fact that the convictions in question were merely certified and not authenticated as required by § 12-21-70, Code of Alabama 1975 and, three, that the State did not prove that the appellant, Nesbitt, was the same party as the party named in the alleged prior convictions.
The trial of this cause commenced on October 8, 1986, and the verdict was received in open court shortly after 3:40 P.M. that afternoon, finding the appellant "guilty of burglary in the third degree as charged in the indictment." At this time the State made a motion for a presentence investigation and the cause was then continued until November 4, 1986 for sentencing.
At this time the sentencing report was not complete, and the trial court then entered an order continuing this cause until November 13, 1986 for sentencing. (R. 108-111).
On November 13, 1986, the State attempted to prove the three prior Ohio convictions through certified copies of the three convictions. Counsel for appellant objected on the basis that authentication of these foreign documents was required by § 12-21-70, Code of Alabama 1975 as amended. The trial court admitted these three Ohio convictions as proof of the appellant's prior criminal convictions.
With reference to notice to defendant as required by the provisions of Title 13A-5-9, Code of Alabama 1975 and Rule 6(b)(3)(ii), Alabama Temporary Rules of Criminal Procedure, the trial court noted that the appellant had received a copy of the presentence investigative report, indicating that the State intended to proceed against the appellant as a habitual felony offender.
With reference to the requirement of notice under Rule 6(b)(3)(ii), the defendant was entitled to reasonable notice, but such need not have been in writing. We are of the view that reasonable notice was here given as required by the aforesaid rule. See Wilson v. State, 428 So.2d 197 (Ala.Crim.App.1983); Weeks v. State, 473 So.2d 589 (Ala.Crim.App.1985); Garrett v. State, 480 So.2d 58 (Ala.Crim.App.1985) and Humber v. State, 481 So.2d 452 (Ala. Crim.App.1985).
We, therefore, determine that adequate and proper notice was here given to this appellant of the State's intention to proceed against Nesbitt as a habitual felony offender.
However, the trial court erred in admitting three certified copies of these prior convictions from Ohio rather than having them properly authenticated as required by the Alabama statute.
The State has joined, through the Attorney General's office, in moving this court to remand this cause for proper sentencing, to allow the State an opportunity to properly prove the three alleged Ohio convictions.
Inasmuch as we have determined that there was proper notice given to the appellant, we find that the State is entitled to proceed at a new sentencing hearing for this purpose. The proper "triggering requisite" under the Habitual Felony Offender Act was given. Therefore, there would be no infringement of the appellant's rights in this regard, as noted by the Supreme Court of Alabama in its opinions in Ex parte Glover, 508 So.2d 218 (Ala.1987) and Ex Parte Williams, 510 So.2d 135 (Ala.1987).
*43 Because of the error shown, the judgment of conviction is affirmed but the cause remanded for a proper sentencing hearing.
AFFIRMED; REMANDED FOR NEW SENTENCING HEARING.
All the Judges concur.

ON RETURN TO REMAND FROM CIRCUIT COURT
TYSON, Judge.
Following a second sentencing hearing as required by this court's opinion in Nesbitt v. State, 531 So.2d 37 (Ala.1987), the circuit court conducted the appropriate hearing.
The State of Alabama attempted once again to introduce three prior felony convictions from the State of Ohio which were certified and "authenticated" as required by Alabama law. See Nesbitt, supra.
Appellant's counsel objected to these, using as authority Bullard v. Estelle, 665 F.2d 1347 (5th Cir.1982) and Prantl v. State, 462 So.2d 781 (Ala.Cr.App.1984).
After the hearing, the circuit judge determined that the journal entries which were offered by the State showed a possible discrepancy with reference to State's Exhibit One (the three Ohio convictions) and made the following ruling:
"THE COURT: In view of the lack of positive identification and possible discrepancy in the journal entry as contained in State's Exhibit Number One in that they all refer to the second count of the indictment, I find that the State has not met the burden of proof required to impose the enhanced penalty of the habitual offender act, and it is the sentence of the Court that the Defendant be incarcerated in the State penitentiary for a term of ten years. And also pay the sum of $25 to the Alabama Crime Victim Compensation Fund because that was the amount that was in effect at the time of the conviction.
"And I forgot to ask the Defendant if he has anything to say before sentence was imposed?
"THE DEFENDANT: No, I don't Your Honor.
"MR. WILTERS: Your Honor, is he also taxed with Court costs?
"THE COURT: And he is also taxed with Court costs.
(Whereupon, the Proceedings were concluded.)" (Supplemental R. 10)
Following the filing of the return this court directed both sides to file supplemental briefs on the question "whether vel non the State of Alabama should be allowed a second opportunity to present prior alleged felony convictions at the second sentencing hearing of this appellant".
Each side has now filed appropriate briefs as directed.

I
The State notes in its brief that the opinion of Bullard v. Estelle, supra, was vacated by the U.S. Supreme Court as Estelle v. Bullard, 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983). Moreover, it points out in brief that the Texas enhancement statute is substantially different from Alabama Code, § 13A-5-9 (1975).
However, since the trial court declined to impose enhanced punishment and sentenced the appellant to ten years' imprisonment, the issue in this cause is moot.
We note in passing, for future guidance, that this court has expressly upheld the use of properly authenticated out-of-state convictions at the subsequent hearing for purposes of imposing enhanced punishment under the Alabama Habitual Felony Offender Act. See Judge McMillan's opinion in David Randle v. State, [5 Div. 932, June 14, 1988] (Ala.Crim.App.1988) and authorities therein cited.
In view of the foregoing, this cause is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.