579 So.2d 45 (1991)
Clarence MITCHELL
v.
STATE.
CR 89-860.
Court of Criminal Appeals of Alabama.
February 1, 1991.
Remand to Remand April 26, 1991.
*46 W. Lloyd Copeland of Clark, Deen & Copeland, Mobile, for appellant.
Don Siegelman, Atty. Gen., and James F. Hampton, Sp. Asst. Atty. Gen., for appellee.
BOWEN, Judge.
Clarence Mitchell, the appellant, was convicted of two counts of first degree robbery and was sentenced to two concurrent terms of life imprisonment. At the same trial, he was also convicted of sodomy in the first degree and was sentenced to a consecutive term of life imprisonment. He raises three issues on this appeal from those convictions.

I.
The appellant contends that his trial counsel was ineffective for failing to challenge the prosecutor's exercise of her peremptory jury strikes against blacks pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The appellant was represented at trial by lawyer Andrew Jones. Although the prosecutor used four peremptory strikes to remove blacks from the jury venire, Mr. Jones made no objection. "[I]n order to preserve the issue for appellate review, a Batson objection, in a case in which the death penalty has not been imposed, must be made prior to the jury's being sworn." Bell v. State, 535 So.2d 210, 212 (Ala.1988). Lawyer Lloyd Copeland was appointed to represent the appellant after the appellant had been convicted and sentenced. Mr. Copeland filed an amendment to the pending motion for new trial, alleging that trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for failing to make a "Batson" objection.
An evidentiary hearing was held on this issue. It appears that the jury strike list was composed of 24 veniremembers, of which 10 were black. Three blacks were struck by the appellant. The appellant's last strike was the alternate, who was black and who was dismissed before the jury began its deliberations. Four blacks (three males, one female) were struck by the State. The prosecutor used her 2nd, 3rd, 5th, and 6th strikes against blacks. The State's first strike was a white female; its fourth strike, a white male. Three blacks served on the jury. After defense counsel had made this showing, the trial judge stated, "I am not ruling at this time that that [the fact that the prosecutor used four of her six strikes to remove blacks] is a prima facie showing, but I will let [the prosecutor] go ahead and give her race neutral reasons."
The prosecutor stated that her "memory is a little hazy" but looked over her notes and gave the following reasons for her peremptory strikes of black venirepersons.
1) M., # 8The prosecutor stated that she "did not like his appearance. He specifically was wearing an ear ring. * * * And I make it a habit to strike all males who are wearing earrings regardless of color." At one point during the hearing, defense counsel Copeland stated that he *47 "certainly had no qualm with that, about the earring." Later he stated, "Although, with regard to the earring, I think that wouldas I have stated, I think that would certainly be a factor. When it is a black juror, once again, I think they need to go into why it applies to the facts of this particular case." The trial judge stated, "I never have seen what difference it makes what anybody wears, but I may be peculiar in that regard and I think the State's being concerned about his wearing an earring may be a legitimate concern of a lawyer in a case. Can't find fault with it."
2) D., # 13, according to the prosecutor, "was a very obese woman, who to me had a somewhat ... pompouskind of a pompous, putting on airs type attitude." When asked what her occupation was, she initially said "a supervisor and left it at that." Later on, when the prosecutor asked her what kind of supervisor, she responded a "supervisor of environmental services." The prosecutor stated that "it turned out to be was she was the head maid somewhere [a local hospital]." With regard to this strike, the trial judge stated: "I recall wondering about the juror, what in the world she was talking about when she said what she did. And it seemed like we kind of had to drag it out of her what she did. That's really not a quality any lawyer would want in a venire member. I think the State has made a reasonably good explanation on that." The voir dire shows that this veniremember initially responded, "I work at Providence Hospital. I am a supervisor." Upon further questioning, she stated that she was "supervisor of environmental services." When asked, "What is that?" she finally replied, "Housekeeping."
3) L., # 7, was a young black male who was struck "because during voir dire he wasI can't say he was dozing, but I can say he did have his eyes shut." The trial judge stated: "Eyes shut would certainly be a reason if the State thought that the juror was dozing. I can't find fault with that."
4) G., # 5, was struck because he was unemployed and because he indicated he had a job interview or some important appointment that afternoon that he "felt pretty strongly about keeping." With regard to this veniremember, the trial judge stated: "I recall myself feeling very relieved when he was struck because I was worrying about whether or not he would be wondering whether he was going to get to his interview or not throughout the trial."
After the prosecutor gave these explanations for her four strikes, the trial judge found "no pattern of discrimination."
"My observation of [the assistant district attorney] over the numerous cases she has tried before me was that she was absolutely unbiased as among jurors. And her experience with black jurors was generally good. She generally found them to be ready to convict a guilty defendant. I don't see from this a pattern of racial discrimination."
Although the voir dire of the jury is contained in the record on appeal, other than the portions set out above concerning veniremember D., that voir dire provides no insight into the prosecutor's exercise of her peremptory strikes. The voir dire was not extensive. With the exception of D., the prosecutor asked no follow-up questions associated with her reasons for exercising her peremptory strikes. Here, there was "a lack of questioning to the challenged juror, or a lack of meaningful questions." Ex parte Branch, 526 So.2d 609, 624 (Ala. 1987). See also Jackson v. State, 557 So.2d 855, 856 (Ala.Cr.App.1990) ("The prosecutor did not specifically question any of the five blacks he struck and did not ask any question on voir dire relating to the explanation he gave for his strikes of any black veniremember."). However, there is no evidence of either "disparate treatment" or "[d]isparate examination of members of the venire" which would tend to indicate racial discrimination. Ex parte Branch, 526 So.2d at 624.
Recently, the Alabama Supreme Court made the following observations with regard to Batson, as interpreted in Ex parte Branch, supra.
"[A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor *48 struck one or more blacks from his jury. A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, Harrell [v State], 555 So.2d [263] 267 [ (Ala.1989) ], citing United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), then it should also be available to show the absence of a discriminatory purpose.
"... The fact that the blacks struck include both men and women and that they were of a variety of ages, occupations, and social or economic conditions, indicates that race may have been the deciding factor. Harrell, supra, at 266. Furthermore, the prosecutor engaged in a rather limited voir dire, asking only whether any of the members of the venire had been the victim of a crime; whether any of them, or anyone in their immediate family or close circle of friends, had been charged with a crime; whether any of them had any religious beliefs that would effectively prevent them from sitting in judgment on Harrell; and whether any member of the venire thought that possession of marijuana or cocaine should not be a crime. The record fails to show that any of the five blacks responded to the prosecutor's questions in such a way as to give any insight into why they were stricken. The extent of the prosecutor's questions during voir dire and the responses of the venire members to those questions are also relevant in determining whether the prosecutor engaged in purposeful discrimination. Harrell, supra, at 266. Finally, we take judicial notice of Jones v. Davis, 906 F.2d 552 (11th Cir.1990), in which the United States Court of Appeals, Eleventh Circuit, reversed the district court's denial of habeas corpus relief for Jones, noting that Jones had established a prima facie case of discrimination under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), on the part of the Mobile County district attorney's office and that that prima facie case had not been rebutted. The past conduct of the prosecutor in using peremptory challenges to strike all blacks from the jury venire is an important factor to be considered in determining whether an inference of discrimination exists. Harrell, supra, at 266."
(Emphasis in original.) Harrell v. State, 571 So.2d 1270, 1271-72 (Ala.1990).
In this case, blacks composed approximately 42% (.416) of the venire panel, after certain members had been excused for cause. Blacks composed 25% of the jury. The fact that three blacks served on the appellant's jury is not determinative. "[A] prima facie case may be made where relevant circumstances indicate an inference of purposeful race discrimination no matter that one or more black persons may remain on the jury." United States v. Wilson, 884 F.2d 1121, 1123 (8th Cir.1989). "The striking of one venireperson for a racial reason violated the Equal Protection Clause, even when valid reasons for striking some black jurors are shown." Williams v. State, 548 So.2d 501, 507 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989). "Of course, the fact that blacks are ultimately seated on the jury does not necessarily bar a finding of discrimination under Batson see [United States v.] Battle, 836 F.2d [1084] at 1086 [(8th Cir.1987) ], but the fact may be taken into account in a review of all the circumstances as one that suggests that the government did not seek to rid the jury of persons who shared the defendant's race." United States v. Young-Bey, 893 F.2d 178, 180 (8th Cir.1990). "[I]t is important that the defendant come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case." United States v. Moore, 895 F.2d 484, 485 (8th Cir.1990). "[T]he defense in a Batson -type case should at least attempt to make a record showing that the so-called race-neutral reasons given by the prosecution are a *49 mere sham or a pretext to disguise true racial discrimination." Ex parte Riggs, 558 So.2d 981 (Ala.1990) (Adams, J., concurring specially).
"No per se rule exists to establish a prima facie case of purposeful discrimination.... Nor does a prosecutorial checklist exist to avoid the inference of discriminatory practices. `The Supreme Court's mandate in Batson to consider all the facts and circumstances means that we cannot lay down clear rules as to [what] ... will constitute or refute a prima facie case.' [United States v.] Sangineto-Miranda, 859 F.2d [1501] at 1521 [ (6th Cir.1988) ]." United States v. Grandison, 885 F.2d 143, 147 (4th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990).
This Court has shown no reluctance to reverse a conviction for a "Batson" violation.[1] However, we consider the reasons given by the prosecutor marginally sufficient under the particular facts of this case to constitute race-neutral reasons for striking the black veniremembers. While the office of the Mobile County district attorney does have a history of racial discrimination in the selection of trial juries, see Harrell, 571 So.2d at 1272, the trial judge in this case specifically indicated that this particular prosecutor did not have such a reputation. That finding is a significant factor in our decision.
Furthermore, it appears to this court that the trial judge was sensitive to the issue of racial discrimination. At the hearing on the amended motion for new trial, the trial judge, in commenting on the fact that he indicated blacks on his jury "seating chart" with a "B," stated: "That has recently of a necessity become my practice since this Batson issue started being raised. I really think its horrible that an officer of the state is called on to observe anybody's color or race. But that seems to be what we are put to."
This Court has no difficulty in deciding that the prosecutor provided race-neutral reasons for her strike of D., L., and G.. The fact that a veniremember is evasive or ambiguous in answering questions on voir dire is certainly a valid reason for striking that member from the venire. The fact that a veniremember appears to be inattentive or "dozing" during the proceedings is another valid reason for striking. See United States v. Mathews, 803 F.2d 325, 331 (7th Cir.1986), reversed on other grounds, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (tardy, disinterested); Mathews v. State, 534 So.2d 1129, 1130 (Ala.Cr.App.1988) ("didn't seem very attentive"); Madison v. State, 545 So.2d 94, 100 (Ala.Cr.App.1987) (Bowen, J., concurring specially) ("fell asleep"); Nesbitt v. State, 531 So.2d 37, 40 (Ala.Cr.App.1987) ("appeared to be inattentive"); Smith v. State, 531 So.2d 1245, 1248 (Ala.Cr.App.1987) ("appeared to be asleep or inattentive").
The fact that a veniremember appears hostile or impatient is a valid reason for striking that juror. See Leonard v. State, 551 So.2d 1143, 1150 (Ala.Cr.App.1989) (veniremember "seemed `alarmed and upset' and `rather hostile' when venire was informed jury would be sequestered"). But see Avery v. State, 545 So.2d 123, 126 (Ala.Cr.App.1988), wherein this Court stated, "[W]e are troubled by the reasons given and have grave doubts as to their legitimacy" where the reasons were "demeanor, attitude, and body language [which] indicated a negative attitude toward the prosecutor and the state's case."
*50 Although the prosecutor's reason for striking veniremember M. presents some concern, and may very well not be sufficient under other circumstances, this Court is not prepared to find that a lawyer has no "legitimate concern" over a veniremember who wears a distinctive article of jewelry or clothing, or that the attire of a veniremember should not be a factor in striking a veniremember. See Currin v. State, 535 So.2d 221, 223 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala.1988) (sunglasses). In Watkins v. State, 551 So.2d 421, 422-23 (Ala.Cr.App.1988), this Court found that the prosecutor's stated reason that the black veniremember wore "a shirt which was cut off short and was sleeveless" was "facially race neutral." Yet, it must also be recognized that such reasons may be suspect because they are not related to the facts of the case and appear to constitute "`[a]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.'" Ex parte Branch, 526 So.2d at 624.
This Court is suspicious of any strike based on the personal appearance of the veniremember. "`[P]rosecutors purporting to rely solely on their interpretation of body language, gestures, and glances do so at their peril.'" Ex parte Branch, 526 So.2d at 630 n. 16 (emphasis deleted). However, in this case, those appearances were, for the most part, corroborated. Here, the trial judge indicated that he was "relieved" when the State struck G. because the veniremember appeared impatient and preoccupied. Although arguing that the prosecutor should have directed some voir dire questions toward M., defense counsel acknowledged that the fact that M. wore an earring should have been a "factor" in the decision to strike.
"[W]e note that `the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.' Batson, supra, 476 U.S. at 97, 106 S.Ct. at 1723. It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination. Ex parte Jackson, 516 So.2d 768 (Ala.1986). Moreover, the trial court's findings as to whether the defendant has established purposeful racial discrimination are to be accorded great deference on appeal, Batson, supra, 476 U.S. at 98, 106 S.Ct. at 1724, and should be reversed on appeal only if they are clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala.1987)."
Ex parte Lynn, 543 So.2d 709, 712 (Ala. 1988), cert. denied, ___ U S. ___, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989).
Under these circumstances we are reluctant to find that the trial judge clearly abused his discretion. "Since the trial judge's findings ... largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. The trial judge "plays a `pivotal role' in determining whether a prima facie case has been made under Batson because he or she observes the voir dire procedure firsthand and is in a far better position than we to assess the prosecutor's decisions." Young-Bey, 893 F.2d at 180-81. An appellate court may reverse the trial court's determination that the prosecutor's peremptory challenges were not motivated by intentional discrimination only if that determination is "clearly erroneous". Ex parte Branch, 526 So.2d at 625. Here, this Court cannot find any clear abuse of discretion. Therefore, it cannot be said that trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because there was no showing that trial counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064.[2]

*51 II.
The appellant contends that two convictions were improperly used to enhance his sentences and that trial counsel was ineffective in failing to object to the admission of evidence of the prior convictions because they were not properly certified.

A.
The State used two prior convictions from the State of Texas to enhance the appellant's sentences. Those convictions were not properly authenticated as required by Ala.Code 1975, § 12-21-70, Nesbitt v. State, 531 So.2d 37, 42 (Ala.Cr.App. 1987); McBride v. State, 480 So.2d 619, 620 (Ala.Cr.App.1985), because the copies of the prior convictions did not include "a certificate of the judge, chief justice or presiding magistrate that the said attestation [of the clerk] is in due form." However, the appellant's argumentsthe lack of proper authentication and counsel's failure to raise this objectionare raised for the first time on appeal. They were not raised in the amended motion for new trial. Therefore they are not properly preserved for appellate review. Moreover, this cause must be remanded for a proper sentencing on another ground.

B.
The appellant was sentenced as a habitual felony offender with two prior felony convictions. Those convictions were from the State of Texas and were entered in November 1987. Both convictions were for the same offense: "Theft of property less than the value of $750 and having been previously convicted of theft two times as charged in the affidavit and information/enhanced." In one case, the appellant was sentenced to two years' imprisonment and was fined $200; in the other, he was sentenced to three years' imprisonment and was fined $300. At the sentencing hearing, the State failed to show that the conduct upon which those two convictions are based would constitute a felony in Alabama. At the sentencing hearing, the trial judge stated: "So, he has got quite a record. Now, I am not saying those two thefts were felonies or misdemeanors. We don't know. But apparently this man is a chronic thief." While trial counsel's objection on this matter certainly could have been more specific and definite, it appears that the judge was aware of the problem. We consider the objection made at trial sufficient to preserve this issue for review. See Ex parte Brannon, 547 So.2d 68 (Ala. 1989); Ex parte Peterson, 466 So.2d 984, 987 (Ala.1984).
Under the Texas Penal Code, a person is guilty of third degree theft if "the value of the property stolen is less than $750 and the defendant has been previously convicted two or more times of any grade of theft." Tex.Penal Code Ann. § 31.03(e)(4)(C) (Vernon 1989). This section "authorizes third-degree felony treatment for anyone previously convicted of theft two or more times, without regard to the value [of the property] stolen." Practice Commentary to § 31.03 at p. 23. Because none of the facts surrounding the two prior Texas convictions are known, it is impossible to determine whether those thefts would have been felonies had they been committed in Alabama. It is conceivable that the conduct on which were based both the appellant's two prior theft convictions and his 1987 theft convictions would have been punishable only as misdemeanors in Alabama. See Ala.Code § 13A-8-5 (1975).
In determining whether an out-ofstate conviction may be used to enhance punishment under Alabama's Habitual Felony Offender Act, it is the conduct upon which the foreign conviction is based which must be considered and not whether the foreign jurisdiction treats that conduct as a felony or a misdemeanor:
"By adopting Temporary Rule 6 [A.R. Crim.P.Temp.], this Court placed emphasis on the `conduct' made the basis of the prior conviction, rather than where it occurred, or when it occurred. This Court, therefore, made the triggering mechanism not whether another jurisdiction might have punished the prior offense by imprisonment for more than one year, but whether Alabama considered the prior `conduct' so blameworthy as to *52 merit more than one year's imprisonment. The wording of the rule, therefore, has the following effect: ... (2) A conviction in any other jurisdiction, at any time, for a criminal act punishable in the other jurisdiction by a sentence exceeding one year, however, is not a `felony conviction' unless the act `would have been' punishable under our own criminal laws on or after January 1, 1980, by a sentence exceeding one year.... Consequently, the rule does not say, and was not intended to say, that `a felony is a felony is a felony is anything punishable anywhere, anytime, by a sentence exceeding one year.'"
Thompson v. State, 525 So.2d 820, 826 (Ala.1985), cert. denied, 488 U.S. 834, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988) (emphasis in original). Therefore, the trial court erred in sentencing the appellant as a habitual offender based upon his two Texas convictions for theft without having determined that both of those convictions would constitute a felony in Alabama.
This cause is remanded to the trial court with instructions that the appellant's sentences in cases CC-89-1978 and CC-89-1979 be set aside. The trial court is to conduct a new sentencing hearing. If the appellant is to be sentenced as a habitual offender, the State must provide properly authenticated proof of the two Texas convictions and proof that the conduct on which each conviction is based would constitute a felony if committed in Alabama. This sentencing hearing shall be conducted and return made to this court within 60 days from the date of this opinion.
REMANDED WITH DIRECTIONS FOR PROPER SENTENCING.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
The appellant, Mitchell, was convicted of two counts of robbery in the first degree and was also convicted for sodomy in the first degree. On original submission, this Court affirmed the three convictions, but set aside the appellant's three sentences under the Habitual Felony Offender Act and remanded this case to the circuit court so that a new sentencing hearing could be conducted. See page 46.
On remand, the trial court, in an extremely conscious and exemplary manner, reconsidered the circumstances surrounding the commission of these crimes and the appellant's criminal history. After the State was unable to obtain the proper documentation of the appellant's prior felony conviction in the State of Texas, the trial court sentenced the appellant without application of the Habitual Felony Offender Act.
For each of the two robbery convictions (CC-89-1979), the appellant was sentenced to a term of 75 years' imprisonment with the sentence to run concurrently. The appellant was sentenced to 75 years' imprisonment for the sodomy conviction (CC-89-1978), and that sentence was ordered to run consecutive to the robbery convictions.
All three sentences are within the proper range of punishment for the offenses. See Ala.Code 1975, §§ 13A-8-41(c); 13A-6-63(b); 13A-5-6(a)(1). The judgment of the circuit court is affirmed.
OPINION EXTENDED;
AFFIRMED.
All Judges concur.
NOTES
[1] The Alabama Court of Criminal Appeals has reversed the following cases based on the prosecutor's racial discrimination in the exercise of his peremptory strikes: Jackson v. State, 557 So.2d 855 (Ala.Cr.App.1990) (Mobile County); Avery v. State, 545 So.2d 123 (Ala.Cr.App. 1988) (Chambers County); Powell v. State, 548 So.2d 590 (Ala.Cr.App.1988) (Montgomery County), affirmed, 548 So.2d 605 (Ala.1989); Williams v. State, 548 So.2d 501 (Ala.Cr.App.1988) (Montgomery County), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989); Acres v. State, 548 So.2d 459 (Ala.Cr.App.1987) (Montgomery); Floyd v. State, 539 So.2d 357 (Ala.Cr. App.1987) (Barbour County); Henderson v. State, 549 So.2d 105 (Ala.Cr.App.1987) (Elmore County); Madison v. State, 545 So.2d 94 (Ala.Cr. App.1987) (Mobile County); Owens v. State, 531 So.2d 22 (Ala.Cr.App.1987) (Russell County). Neither of the cases from Mobile County involved the same judge or prosecutor involved in the present case.
[2] The outcome-determinative test of Strickland v. Washington is not the proper criteria for measuring prejudice in the context of a Batson error. If a Batson error is found, prejudice must be presumed. Ex parte Yelder, 575 So.2d 137, 141 (Ala.1991) (adopting the dissenting opinion of Bowen, J., in Yelder v. State, 575 So.2d 131 (Ala.Cr.App.1990)). In this case, because the appellant did not satisfy the first prong of the Strickland test, the effect of any ineffectiveness need not be determined.