Lonnie Casey, Jr., was convicted of driving under the influence of alcohol ("DUI"), a violation of § 32-5A-191(a), Ala. Code 1975; reckless driving, a violation of § 32-5A-190, Ala. Code 1975; and driving while his license was revoked, a violation of §32-6-19, Ala. Code 1975.
Before addressing the issues Casey raises on appeal, we note that there is a discrepancy between the sentence imposed by the trial court at Casey's sentencing hearing and the sentence as provided for in the case action summary sheet. At the sentencing hearing, the trial court sentenced Casey, for driving under the influence (Count II), to 6 months' imprisonment, revoked his license for 3 years, and ordered him to attend a court referral program and to pay a fine of $2,000. For reckless driving (Count III), the trial court sentenced Casey to 90 days' imprisonment and ordered him to pay a fine of $250. For driving while his license was revoked (Count IV), the trial court sentenced Casey to 90 days' imprisonment and ordered him to pay a fine of $250 and to pay $50 to the Traffic Safety Fund. The trial court ordered the sentences to run consecutively. (R. 101-103.) In contrast, the case action summary sheet indicates the following:
 "Sentencing hearing conducted. The defendant having nothing to say, the court sentenced the defendant to a term of one (1) year in the Baldwin County Jail, with respect to Count II of the indictment. Said sentence is to run consecutive to the sentence he is currently serving imposed in Case No. 93-081.01. With respect to Count III, the defendant *Page 1138 
is ordered to serve a term of 90 days in the Baldwin County Jail; said sentence is to run concurrent with the sentence imposed in Count II. With respect to Count IV, the defendant is to serve 180 days in the Baldwin County Jail; said sentence is to run concurrent with the sentence imposed in Count II of the indictment. The defendant is ordered to pay a fine in the sum of $4,000.00; to report to the Court Referral Officer and to pay their associated fee; to surrender his Alabama Driver's License to the court for a three (3) years suspension; and is taxed with the cost of the court with respect to Count II. With respect to Count III, the defendant is ordered to pay a fine in the sum of $500.00 and with respect to Count IV, the defendant is ordered to pay a fine in the sum of $250.00 and to pay the sum of $50.00 to the Traffic Safety Trust Fund."
(C. 3.) (Emphasis added.) Because the sentence pronounced by the trial court should be accurately reflected in the court's case action summary, we remand this case to the trial court to reconcile the case action summary with the sentence pronounced in open court.
 FACTS
The evidence presented at trial showed the following. Officer Buck Rogers pulled Casey's vehicle over after observing Casey driving on the wrong side of the road, swerving off the road several times, and running a stop sign. (R. 9-11.) Officer Rogers testified that Casey's eyes were bloodshot, that his speech was slurred, and that there was a very strong odor of alcohol coming from both the vehicle and from Casey's person. (R. 13, 15.) Officer Rogers had to help Casey out of his car, and Officer Rogers discovered several empty beer cans in the car. Casey refused to take a field sobriety test. (R. 19-20.) Casey was then placed under arrest and was transported to the Foley Police Department, where he refused to take an Intoxilyzer 5000 breath test. (R. 21, 24.) After being placed in jail, Casey became unruly — screaming and kicking and urinating on the floor. Officer Rogers sprayed Casey with pepper spray. Officer Rogers testified that, in his opinion, Casey was "too intoxicated to be driving a vehicle." (R. 34.)
The jury convicted Casey of driving under the influence, driving while his license was revoked, and reckless driving.
 I.
Casey argues that the circuit court did not have subject matter jurisdiction to hear his case. Immediately before trial, the indictment charging Casey with felony DUI was nol-prossed. Casey asserts that because the remaining charges against him were misdemeanors, jurisdiction over his case rested exclusively with the Foley Municipal Court.
The remaining charges against Casey of misdemeanor DUI, reckless driving, and driving with his license revoked were returned by indictment. Section 12-12-32, Ala. Code 1975 provides:
 "The district court shall have exclusive original trial jurisdiction over prosecutions of all offenses defined by law or ordinance as misdemeanors, except:
". . . .
 "(3) Any misdemeanor for which an indictment has been returned by a grand jury."
However, § 12-12-51, Ala. Code 1975, states that "[t]he district court shall have exclusive original jurisdiction of misdemeanor prosecutions for traffic infractions, except ordinance infractions prosecuted in municipal courts." Driving under the influence is a traffic offense. Wright v. State, 494 So.2d 177 (Ala.Cr.App. 1986).
The conflict between § 12-12-32 and § 12-12-51 was resolved in Wright v. State, 494 So.2d 177 (Ala.Cr.App. 1986). In Wright this Court held:
 "[T]he district court has exclusive jurisdiction of misdemeanor prosecutions for traffic infractions even where an indictment *Page 1139 
has been returned (except ordinance infractions prosecuted in municipal courts). For any misdemeanor prosecution by indictment, other than a traffic infraction, the district court has jurisdiction but does not have exclusive original jurisdiction."
494 So.2d at 179. See also Eskridge v. State, 709 So.2d 1348
(Ala.Cr.App. 1997). Thus, in the case of misdemeanor traffic infractions, including DUI, charged by indictment, the district court has exclusive original jurisdiction.
However, in the present case, Casey was not indicted only for misdemeanor traffic offenses. Casey was also indicted for a felony offense, which is within the jurisdiction of the circuit court. Casey's argument that the circuit court did not have jurisdiction ignores this fact. The misdemeanor offenses against Casey arose from the same incident as the felony DUI with which Casey was originally charged. Under § 12-11-30, Ala. Code 1975:
 "The circuit court shall have exclusive original jurisdiction of all felony prosecutions and of misdemeanor or ordinance violations which are lesser included offenses within a felony charge or which arise from the same incident as a felony charge . . . ."
For example, in Crear v. State, 591 So.2d 530 (Ala.Cr.App. 1991), the defendant was indicted for felony possession of marijuana. However, when the State failed to prove a prior conviction, the circuit court granted the defendant's motion for a judgment of acquittal on felony possession and instructed the jury only on misdemeanor marijuana possession. On appeal, this Court held that the circuit court did not lose jurisdiction when it dismissed the felony charge. Crear v. State, 591 So.2d at 532. See also Ross v. State, 529 So.2d 1074, 1078 (Ala.Cr.App. 1988) ("the [subject matter] jurisdiction of the court, in felony cases, rests upon utilization of a grand jury indictment or information"); Coral v. State, 551 So.2d 1181 (Ala.Cr.App. 1989) (circuit court acquires personal jurisdiction by indictment).
A similar case is presented here. A grand jury returned an indictment against Casey charging a felony DUI, thereby invoking the jurisdiction of the circuit court. The dismissal of the felony DUI against Casey before trial did not strip the circuit court of jurisdiction over the remaining misdemeanor charges. The circuit court had jurisdiction over the charges of DUI, reckless driving, and driving while his license was revoked.
 II.
Casey contends that the trial court erred in denying his motion made pursuant to Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Casey based his Batson motion on the State's striking of two out of three black veniremembers.
The State has the burden of articulating nondiscriminatory reasons for challenged strikes only after the defendant meets the burden of establishing a prima facie case of discrimination. Batson, 476 U.S. at 978. The opponent of the strike bears the initial burden of persuasion regarding racial motivation, and "[u]ntil this burden is met, the challenged party `is under no obligation to offer explanations for its peremptory strikes.' Jackson v. State, 594 So.2d 1289, 1292 (Ala.Cr.App. 1992)." Edwards v. State, 628 So.2d 1021, 1024 (Ala.Cr.App. 1993). However, "where . . . the trial court requests the opposing counsel to state reasons for the peremptory strikes without first requiring that a prima facie case of discrimination be established, this Court will review those reasons and the trial court's ultimate decision on the Batson motion without determining whether the moving party met its burden of proving a prima facie case of discrimination." Harris v. State,705 So.2d 542, 545 (Ala.Cr.App. 1997). That is the case here. Although it did not specifically find that Casey *Page 1140 
had made a prima facie case, the trial court requested a response from the State.
The record shows that the State responded as follows to Casey's Batson objection:
 "[DEFENSE COUNSEL]: We object to the strike of juror number 74 and 69. I believe it is — yes, both of those jurors were black and I don't think there was any basis for the strike other than that.
"THE COURT: All right. [Prosecutor?]
". . . .
 "[THE STATE]: Yes, Your Honor. Number 74 was struck because of the answer that was given to me and basically her husband.
"THE COURT: I can hear you.
 "[THE STATE]: I think that experience would prejudice the jury. As far as number 69, let me see. He was angry."
 "[DEFENSE COUNSEL]: Your Honor, I don't believe —
 "THE COURT: Okay, okay. All right. We have got one black man on the jury. Okay, deny your motion."
(R. 6.)
As to juror number 69, a veniremember's demeanor may form the basis for a valid race-neutral strike. Hart v. State,612 So.2d 520, 524 (Ala.Cr.App. 1992), aff'd, 612 So.2d 536 (Ala. 1992). Because the record does not contain the voir dire proceedings, we cannot determine whether the State's reason for striking juror number 74 was race-neutral. From the record before us, we cannot assess whether the State's reasons for its strikes are valid or are merely pretexts for discrimination. See Baker v. State,683 So.2d 1, 6 (Ala.Cr.App. 1996).
We also cannot determine, based on the trial court's remarks made when it denied Casey's Batson motion, whether the trial court determined that the State's reasons were race-neutral. The trial court's statement "we have got one black man on the jury" may have been merely an observation. We are aware that great deference should be accorded to a trial court's Batson ruling. Davis v. State, 718 So.2d 1148 (Ala.Cr.App. 1997) (citations omitted). However, the trial court's remark hints of the "numbers game" disapproved of in Ex parte Thomas, 659 So.2d 3, 7 (Ala. 1994). "[A] prima facie case may be made where relevant circumstances indicate an inference of purposeful discrimination no matter that one or more black persons may remain on the jury. United States v. Wilson, 884 F.2d 1121, 1123 (8th Cir. 1989)." Ex parte Thomas, 659 So.2d at 7, quoting Mitchell v. State, 579 So.2d 45, 48
(Ala.Cr.App. 1991). "[T]he fact that blacks are ultimately seated on the jury does not necessarily bar a finding of discrimination under Batson." Id.
Therefore, we must remand this cause to the circuit court so that the trial court may enter written findings as to whether the prosecutor's reasons for using its peremptory challenges against black veniremembers were racially neutral. If necessary, the trial court may hold a hearing to determine whether the prosecution's reasons were racially neutral. If the trial court determines that the reasons were not racially neutral, the appellant shall receive a new trial.
We therefore remand this cause to the circuit court for that court to reconcile its case action summary with the sentence pronounced in open court and to provide a written order determining whether the reasons provided by the prosecutor for its peremptory strikes against black veniremembers were racially-neutral. Because the trial court's ruling may moot other issues raised by Casey on appeal, we will defer a review of those issues until the cause is returned from remand. The trial court shall take all necessary action to allow a return to remand to be filed with this court within 45 days of this opinion. Such return shall include the trial court's written findings and, if necessary, a transcript of any hearing. *Page 1141 
REMANDED WITH DIRECTIONS.
Long, P.J., and McMillan, Brown, and Baschab, JJ., concur.